**In re the SIRE PLAN, INC., Bankrupt.**

**Bankruptcy No. 63 B 140 (CB).**

United States Bankruptcy Court, S.D. New York.

June 7, 1989.

Albert Mintzer, New York City, for debtor.

Stephen E. Klausner, Somerville, N.J., Atty for trustee.

James P. Pagano, New York City, for Perry E. Berger, creditor.

## DECISION

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

In the instant proceeding, the petitioner, Albert Mintzer, seeks to have Stephen Klausner, former and present Trustee of Sire Plan, Inc., ("debtor"), relinquish a fund in his possession amounting to approximately $160,000 dollars plus interest earned thereon. The fund is comprised of the surplus proceeds from a judicial foreclosure sale of certain real property (the "Levittown property") in which the debtor had an interest (approximately 73/550ths). Mintzer was the sole stockholder of the now-defunct debtor corporation. It is the petitioner's contention that the Trustee has no right to hold and distribute this fund to creditors of the estate. The petitioner reaches this conclusion through his assertion that the Trustee abandoned any interest in the Levittown property during the prior bankruptcy proceeding.[1]

## ISSUE

Whether the petitioner is entitled to the fund in the Trustee's possession due to the Trustee's alleged abandonment?

## DETERMINATION

No. The Trustee may retain and distribute the fund in his possession.

a) The Levittown property was not abandoned, and even if it was believed to be abandoned, it was not properly abandoned. Therefore, the Trustee is not precluded from reopening the case to gather and distribute funds inuring to the estate.

b) Equity demands this result. As the following memorandum will clearly illustrate, the petitioner's felonious past of de-

---

1. In 1963, Sire Plan, Inc. ("Debtor") and various other "Sire Plan" entities filed under Chapter X of the Bankruptcy Act of 1898. The case was closed in 1981 and subsequently reopened in 1985. *See infra* pp. 692–93.

frauding the creditors of his many, now-defunct, corporations can only lead this Court to do equity by allowing the Trustee to retain and distribute the fund to those to whom it belongs, the defrauded creditors.[2]

## FACTS AND PROCEDURE

In the late 1950s, the petitioner formed, dominated and controlled a complex of corporate entities including Sire Plan Inc. Mintzer was the sole stockholder of Sire Plan, Inc., which owned the voting stock of several of the other "Sire" entities. Thus, Mintzer had complete control of several of the entities. The Sire entities acted together as a real estate investment plan whereby debentures were issued to investors who, in the future, were to become fractional owners of real property purchased with the money from their investments.

In March 1963, Sire Plan, Inc., filed, along with close to twenty other Sire affiliates, a voluntary petition in bankruptcy and sought a reorganization under chapter X of the Bankruptcy Act of 1898. This predicament was the result of Mintzer's use of the real estate investment plan as a tool to defraud its investors.

The Sire Plan entities (an acronym for Small Investors Real Estate Plan) were comprised of approximately twenty corporate affiliates which were under the control of Mintzer. The plans operated under a premise whereby investments were solicited from the public, and when a certain level of cash from the investments was reached, the plan would purchase real estate in which the investors would become "fractional fee owners." During the interim, between the time of the investment and the purchase of the real estate, the investor was issued a debenture for the face value of the investment and an interest payment (typically, 8%). During this period, all investment monies were to be held in trust until the property was purchased.

However, Mintzer did not hold the funds in trust, but used the various Sire affiliates as his own corporate pockets, intermingling the funds of the various entities to his personal gain and to the detriment of his creditors. In many instances, Mintzer never purchased the real estate, but solicited new investors so that he could make interest payments to the prior security holders and retain the principle investments.[3] To conceal this fraud, Mintzer had false transactions recorded on the books and records of the various Sire entities.

As a result of this fraud, the various Sire Plan entities filed bankruptcy in 1963. Mintzer was convicted in June 1964 for Grand Larceny—1st degree by false pretenses violating § 1290 of the New York Penal Law, as well as misdemeanor violations of § 352(e)(8) and § 359(g) of the New York General Business Law. In addition, Mintzer was disbarred in 1964 and has not been reinstated. *See In re Mintzer*, 22 A.D.2d 200, 254 N.Y.S.2d 416 (A.D. 1st Dept.1964).

In May 1974, the debtor was adjudicated bankrupt and the case proceeded as a straight bankruptcy pursuant to chapter IV of the Act. That June, Stephen Klausner was appointed trustee. In 1977, the Trustee filed an interim status report which mentioned that a particular interest of the bankrupt, the property here at issue, had no marketable value, i.e., that its liabilities (tax arrears) and the costs involved in locating the other owners of the Levittown property to either (a) put the property up for sale or (b) sell the debtor's interest therein, well exceeded its sale value.

In February 1979, the Trustee filed a final report and in January 1981, an order was signed closing the estate and discharging the Trustee. The debtor never requested, nor received a discharge. The debtor's interest in the Levittown property was never administered.

---

2. Such creditors include bondholders who were defrauded of principal and interest on notes held, as well as fractional fee owners of the debtor's interest in the Levittown property and other properties.

3. This investment scheme operated like a "Ponzi" scheme whereby returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. *See* 14 C.B.C.2d 1261, 1263 n. 1 (1986).

However, shortly thereafter, a real estate boom hit Long Island. During this period, the value of the Levittown property increased dramatically. At this time, the property was foreclosed on. A sale was effectuated whereby a large surplus remained; approximately $160,000 for the Sire Plan entities involved.

In 1985, when the surplus became available and Klausner learned of its existence, he sought an order reopening the case and reappointing him as trustee. Such order was signed by Judge Lifland on September 18, 1985. In September 1987, the surplus was segregated and notification was given to the owners. Shortly thereafter, the petitioner filed his prayer for relief. The petitioner claims that the Trustee abandoned the property. Petitioner reaches this conclusion based on (1) Trustee's interim report which stated that the property had no marketable value, and (2) that when the Trustee was discharged, his relationship ended with regard to the Levittown property.

## DISCUSSION

### a) *The Trustee did not abandon the Levittown Property.*

Under the Bankruptcy Act of 1898, Rule 608 required prior court approval before a trustee could abandon any property of the estate.[4] An examination of the Court's record does not reveal any hearing or order regarding abandonment of the Levittown property or the interests therein.

■■■ However, there is authority for the proposition that a formal act is not absolutely essential and that any *clear* manifestation of the trustee's intent to abandon property will suffice. 4A *Collier on Bankruptcy* ¶ 70.42, p. 504–05 (14th ed. 1978). But whether or not a manifestation

of intent is clear and unambiguous raises a difficult question, particularly where the manifestation consists of inaction rather than action. *Id.* at 505–06. Here, the Trustee merely reported that at that time (1977), the Levittown Property had no marketable value. *See* Trustee's Interim Report 6/10/77. It appears that the Trustee was merely making a status report as to the value of the property of the estate, rather than recommending an abandonment of the property in question. Due to the legal effects of abandonment on the rights of both the trustee and the bankrupt, it is desirable that there be clear and unequivocal action in matters of abandonment. Thus, the burden of proof that lays with the petitioner is a difficult burden to overcome. 4A *Collier on Bankruptcy* ¶ 70.42, p. 501 n. 2a (14th ed. 1978). *See also In re Peninsula Roofing and Sheet Metal, Inc.*, 9 B.R. 257 (1981). Petitioner has not met this burden.

■■■ Rule 608 also provides that in limited circumstances, property that is scheduled, but not administered at the close of the estate will be deemed abandoned with approval of the Court. However, the impetus behind this provision is for an effective, expeditious and inexpensive solution for the vexing problem that not infrequently arises when property belonging to the estate is recovered after the case is closed but it is of insufficient value to warrant reopening of the case. 4A *Collier on Bankruptcy*, 6–99, 100 (14th ed. 1978). This justification is inapposite to the facts of the instant case. Here, the fund in question is certainly of sufficient value to warrant the reopening of the case.

■■■ In the past, abandonment was only found, notwithstanding the lack of a formal hearing and order, when to hold otherwise would act as a great inequity or hardship

---

4. Rule 608. Abandonment of Property.
   The court may, on application or on its own initiative and after hearing on such notice as it may direct, approve the abandonment of any property and, without reopening the case, may direct the abandonment of any property of inconsequential value discovered after a case is closed. If a case is closed without administration of property of the estate that

has been scheduled, the property shall be deemed to have been abandoned with the approval of the court, and on request the court may, without reopening the case, enter an order approving the abandonment.
   *See also* Advisory Committee's Note "... it is clearly desirable for any abandonment by the trustee to be authorized by an express order of the court...."

on the bankrupt if the trustee was allowed to step in long after the bankruptcy and distribute the property after the bankrupt had expended effort and money on the property. *See, e.g., Sparhawk v. Yerkes,* 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915 (1897). Again, such a scenario is distinguishable from the facts of the case at bar. Here, there was less than a four year period from the discharge of the Trustee and the reopening of the case. In addition, other than attempt to obtain the proceeds, the petitioner has not expended any money or effort on the property.

Thus, the Levittown Property was not abandoned by formal hearing and order, nor was it deemed abandoned. Therefore, it remains property of the estate and the Trustee has the right to distribute its proceeds. Unlike subsection (c) of 11 U.S.C. 554, the Bankruptcy Act of 1898 did not provide for the deemed abandonment of non-administered property to the debtor when the case is closed.[5] However, even if such a provision existed under the Act, equity could not nor will not allow funds to be abandoned to a defunct corporation thus allowing a sole stockholder to benefit from his misdeeds.

b) *Equity demands that the trustee be allowed to retain and distribute the proceeds of the Levittown Property.*

■■■ A Bankruptcy Court sits as a court of equity, and may sift through the circumstances surrounding any claim to see that injustice and unfairness is not done in the administration of the estate. 28 U.S.C. § 1481 (1976 ed., Supp. IV). *See Central States Corp. v. Luther,,* 215 F.2d 38, 45 (10th Cir.1954) *citing Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Clearly, the background of this case (petitioner's fraud) can only lead this Court to use its equitable power to allow the Trustee to retain and distribute the proceeds from the Levittown property. The Bankruptcy Court's equitable powers "have been invoked to the end that fraud will not prevail, that substance will not give way to

form, that technical considerations will *not* prevent substantial justice from being done." *Mac Arthur Co. v. Johns Manville Co.,* 837 F.2d 89, 94 (2d Cir.1988) *citing Pepper,* 308 U.S. at 305, 60 S.Ct. at 244–45 (emphasis added).

It would surely be inequitable if this Court permitted Mintzer's fraud to be consummated by turning over the proceeds to the petitioner; the defrauder would benefit from his fraud. When there is the existence of a planned and fraudulent scheme, as is the case here, the necessity of equitable relief against that fraud becomes insistent. Once the fraud is uncovered, it is the duty of the bankruptcy court in the exercise of its equity jurisdiction to undo it. "Otherwise, the fiduciary duties of dominant or management stockholders would go for naught; exploitation would become a substitute for justice; and equity would be perverted as an instrument for approving what it was designed to thwart." *Pepper,* 308 U.S. at 312, 60 S.Ct. at 248. To find that the Trustee had lost title to the property because of "deemed abandonment" might give effect to the letter of the law, but certainly not the spirit and purpose of the law.

In addition, the Bankruptcy Court as a court of equity has the power to inquire and determine who the lawful owners of property are. 1 *Collier on Bankruptcy* ¶ 2.09, p. 172 (14th ed. 1976). Mintzer cannot be considered a lawful owner of this property when he defrauded the investors of his various property buying schemes. To permit Mintzer to obtain the proceeds of the Levittown property, which may provide the only recovery for many creditors who have yet to see a penny of the debt they are owed since as long as twenty-five years ago, would be inequitable.

Finally, when property comes within the jurisdiction of the bankruptcy court, power is conferred and a duty is imposed upon the court to decide controversies in relation to

---

**5.** 11 U.S.C. § 554(c)

Unless the court orders otherwise, any property scheduled under § 521(1) of this title [11 U.S.C. § 521(1)] not otherwise administered at the

time of the closing of a case is abandoned to the debtor and administered for purposes of § 350 of this title [11 U.S.C. § 350].

the disposition of such property and to determine the rights therein. *See* 1 *Collier on Bankruptcy* ¶ 2.46 p. 276 (14th ed. 1976).

In view of the above considerations, it is this Court's determination that the proceeds of the Levittown Property belong to the creditors of Mr. Mintzer's various corporate entities. Further, it is the trustee who shall retain and distribute such proceeds. Petitioner's motion is denied.

Settle an Order consistent with this decision.