# United States Court of Appeals
## For the First Circuit

Nos. 11-1364, 11-1386

IN RE: MICHAEL FURLONG; JOANN FURLONG,

Debtors.

ANDREW C. DONARUMO; MURRAY SUPPLY CORPORATION,

Appellants, Cross-Appellees,

v.

MICHAEL FURLONG; JOANN FURLONG,

Appellees, Cross-Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

Anthony L. Gray, with whom Natalie A. Heineman, Jeffrey J. Phillips, Daniel Treger, Pollack & Flanders, LLP, and Phillips & Angley were on brief, for appellants, cross-appellees.
Jeffrey B. Renton, with whom Michael B. Feinman, Matthew J. Ginsburg, Gilbert & Renton LLC, and Feinman Law Offices were on brief, for appellees, cross-appellants.

November 1, 2011

**STAHL**, <u>Circuit Judge</u>.   On December 19, 2006, after the failure of their business, Drew's Plumbing & Heating II (Drew's II), Michael and JoAnn Furlong (the Furlongs) filed petitions under Chapter 7 for personal and corporate bankruptcy.   During the pendency of the proceedings before the bankruptcy court, the Furlongs filed a Motion to Verify or Compel Abandonment of Certain Property of the Estate (Motion to Verify), which was opposed by Andrew Donarumo (Donarumo) and Murray Supply Corp. (Murray Supply). The bankruptcy court ruled on the motion on September 28, 2010, finding that claims against Donarumo had been properly abandoned from both estates but that the stock of Drew's II remained property of the personal bankruptcy estate.   <u>In re Furlong</u> (<u>Furlong I</u>), 437 B.R. 712, 721 (Bankr. D. Mass. 2010).   Donarumo and Murray Supply appealed the abandonment ruling, while the Furlongs cross-appealed the ruling regarding the stock.   The district court affirmed the bankruptcy court on April 1, 2011, <u>In re Furlong</u> (<u>Furlong II</u>), 450 B.R. 263, 271 (D. Mass. 2011), and this timely appeal followed, with the parties maintaining their positions from below.   We affirm.

## I.   **Facts & Background**

On January 14, 2005, the Furlongs purchased the assets of Drew's Plumbing & Heating, Inc. (Drew's I) from Andrew Donarumo for $1 million, $800,000 of which was in cash and $200,000 of which was in the form of a promissory note secured by mortgages on the

Furlongs' real property. With the purchased assets, the Furlongs formed Drew's II, but the business failed by June 5, 2006. The Furlongs claim that Drew's II failed because Donarumo engaged in fraud with respect to the original sale and competed with Drew's II after the sale, including poaching its customers. Donarumo contests these allegations.

On December 19, 2006, the Furlongs filed Chapter 7 bankruptcy petitions for themselves personally and for the corporate bankruptcy of Drew's II. John A. Burdick, Jr. (Trustee) was appointed to serve as trustee for both cases. In both bankruptcies, the Furlongs listed on the "Schedule B-Personal Property" (Schedule B) "Claims for Breach of Contract (Andrew Donarumo et al.)," with "Indeterminate" value. On the Schedule B for the personal bankruptcy, the Furlongs listed "Drew's Plumbing & Heating II, Inc. - 100% Interest," with "Unknown" value.

At a creditors' meeting held pursuant to 11 U.S.C. § 341 on January 17, 2007, Mr. Furlong discussed with the Trustee and present creditors the claims against Donarumo. Though the schedule only listed claims for breach of contract, at the § 341 meeting, Mr. Furlong described related claims stemming from Donarumo's sale of Drew's II that the Furlongs intended to bring on their own behalf and on behalf of Drew's II, including claims sounding in tort. After the creditors' meeting and before the Trustee took any

action on the claims, Donarumo consulted his attorney as to how he should respond to the Furlongs' claims.[1]

Following the creditors' meeting, the Furlongs exchanged letters and emails with the Trustee regarding the claims and also sent him a sixteen-count draft complaint. The complaint laid out claims for breach of contract, but also claims for deceit, misrepresentation, breach of the implied covenant of good faith and fair dealing, negligence, breach of fiduciary duty, intentional interference with advantageous business or contractual relationships, intentional and negligent infliction of emotional distress, and for violations under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. The Trustee, using the draft complaint, attempted to retain an attorney to pursue the case on a contingency basis but was unable to do so on terms he found acceptable.

With the statute of limitations on the state claims running, the Furlongs asked the Trustee to abandon the claims. At the same time, the Trustee was seeking to establish that $5,000 that the Furlongs held in a bank account was not exempt from the personal bankruptcy. The Furlongs agreed to turn over the $5,000

---

[1] The record is not entirely clear, but a reasonable inference may be drawn from Donarumo's malpractice complaint against his attorney that he learned about the Furlongs' claims against him at the § 341 creditors' meeting and therefore had actual notice of the extent of the claims, which caused him to consult counsel after the meeting.

to the Trustee, while the Trustee agreed to abandon all claims against Donarumo.

On October 26 2007, in the corporate bankruptcy, the Trustee filed a "No Asset and No Distribution Report," and on December 28, 2007, the corporate bankruptcy estate was closed. Accordingly, any scheduled assets that had not been administered, including all properly-scheduled claims, were abandoned by operation of law under 11 U.S.C. § 554(c) as of the closing of the corporate bankruptcy estate.

The Trustee filed a "Notice of Intention to Abandon" (Notice) in the personal bankruptcy on November 6, 2007, in which the Trustee stated his intent to abandon "a cause of action against Andrew Donarumo, et al." In the "Reason for Abandonment" section, the Trustee explained his failure to find an attorney who would prosecute the claims on acceptable terms, and stated that, in his business judgment, "pursuing this litigation would not be cost effective for the estate." Also in the "Reason for Abandonment" section, the Trustee characterized the claims as "based upon the Debtors' allegation that certain misrepresentation and other business related tort cause [sic] of action arose from the purchase of a business known as Drew's Plumbing and Heating, Inc. II." No objections to the Notice were filed, and the bankruptcy court approved the abandonment on November 30, 2007.

On January 10, 2008, the Furlongs and Drew's II filed suit against Donarumo and others in Suffolk Superior Court in Boston, Massachusetts, alleging claims similar to those outlined in the draft complaint that the Furlongs had shown to the Trustee, all of which related to the sale of the assets to Drew's II.

Prior to the filing of the bankruptcy petitions, Drew's II had surrendered its business assets, including both tangible assets and "general intangibles" (and therefore possibly some or all of its claims against Donarumo) to its secured lender, Key Bank. Key Bank then sold the tangible and intangible assets to Gem Plumbing. On February 13, 2010, Gem Plumbing assigned back to the Furlongs and Drew's II whatever rights it held in any claims against Donarumo or his business entities. On February 27, 2010, the Furlongs, at a meeting of the directors of Drew's II at which they were the sole attendees, assigned to themselves these rights. The Trustee was not invited to the meeting, of which he was unaware, nor was he asked to approve the assignment.

On December 9, 2009, the Trustee filed his Final Report and Account Before Distribution in the personal bankruptcy, but he subsequently moved to withdraw the report before any hearing could take place, citing Donarumo's January 26, 2010 offer to purchase from the personal bankruptcy estate both the claims against him and the Furlongs' stock in Drew's II for a total of $5,000. The bankruptcy court granted the motion to withdraw, and the Furlongs

-6-

responded on March 12, 2010 by filing the Motion to Verify. Donarumo filed an opposition and cross-motion, and Murray Supply, a creditor, joined the cross-motion, adopting all of Donarumo's positions.

The bankruptcy court issued its memorandum of decision on September 28, 2010, ruling that the Trustee had abandoned all claims in the corporate bankruptcy case by operation of law under § 554(c), as well as all claims in the personal bankruptcy case via the Notice under § 554(a).  Furlong I, 437 B.R. at 719-21. However, the bankruptcy court also ruled that the Drew's II stock had never been abandoned and remained the property of the personal bankruptcy estate, possibly entitling the personal bankruptcy estate to proceeds from any damages awarded to Drew's II.[2]  Id. at 721.  Donarumo appealed the first ruling, and the Furlongs cross-appealed the second.  On April 1, 2011, the district court issued its memorandum and order, affirming the rulings of the bankruptcy court.  Furlong II, 450 B.R. at 271.  This timely appeal followed,

---

[2] While the appeal was pending before the district court, the Trustee and the Furlongs entered a proposed agreement whereby the Trustee would permit the Furlongs to represent the bankruptcy estate's potential interest in the state court claims against Donarumo, and any recovery to either the Furlongs or Drew's II would be shared, with 10% going to the Trustee and 90% to the Furlongs.  The Trustee and the Furlongs moved for the bankruptcy court to approve this agreement on February 17, 2011, but while the motion was pending, the district court issued its decision and Donarumo filed a notice of appeal.  Given the appeal, the bankruptcy court determined that it was stripped of jurisdiction to consider the motion and continued its decision until this Court had concluded its proceedings.

in which Donarumo and Murray Supply again appeal the ruling on the abandonments, and the Furlongs again cross-appeal the ruling on the Drew's II stock.

## II. Discussion

### A. Standing

Though none of the parties raised the issue of standing before the district court, the Furlongs here argue that neither Donarumo nor Murray Supply has standing to appeal the ruling on the abandonments, while Donarumo and Murray Supply challenge the Furlongs' standing to cross-appeal the stock issue. Where the issue of standing was not raised below, this Court must undertake the inquiry without remanding. Spenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001). Standing to appeal a bankruptcy order is limited to "persons aggrieved," that is, persons whose pecuniary interests are adversely affected by the challenged order. Id. at 117-18. All parties here meet the "persons aggrieved" standard and therefore have standing to appeal the various parts of the bankruptcy court's order.[3]

---

[3] The bankruptcy court found that Donarumo, as a scheduled creditor in both bankruptcies, had standing to oppose the Motion to Verify. Furlong I, 437 B.R. at 717 n.5. This Court reviews factual determinations by a lower court of whether a party has standing for clear error, Spenlinhauer, 261 F.3d at 118; there was no error in this determination.

-8-

## B. The Corporate Bankruptcy Abandonment

Donarumo and Murray Supply appeal the lower courts' determinations that claims against Donarumo held by the corporate bankruptcy estate were effectively abandoned by operation of law under 11 U.S.C. § 554(c). "On appeal from a district court decision reviewing a bankruptcy court order, we review the bankruptcy court order directly, disturbing its factual findings only if clearly erroneous, while according de novo review to its conclusions of law." Spenlinhauer, 261 F.3d at 117.

"[A]ll legal or equitable interests of the debtor in property" as of the commencement of bankruptcy, including causes of action, become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak Fire Ins. Co., 448 F.3d 460, 463 (1st Cir. 2006). So long as the claims remain in the bankruptcy estate, "the trustee 'steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of action[].'" DiMaio, 448 F.3d at 463 (quoting In re Rare Coin Galleries, Inc., 862 F.2d 896, 901 (1st Cir. 1988)).

However, like any other property, claims that are disclosed by the debtor to the bankruptcy court may be abandoned by the trustee to the debtor. A debtor has a duty to disclose all assets to the bankruptcy court on a schedule, including legal claims. 11 U.S.C. § 521(a)(1); Graupner v. Town of Brookfield, 450

F. Supp. 2d 119, 124 (D. Mass. 2006). If an asset has been formally scheduled under § 521(a)(1) but has not been administered by the trustee when the estate is closed, the asset is abandoned to the debtor by operation of law. 11 U.S.C. § 554(c).[4] However, property that is neither administered nor abandoned (including property not properly scheduled that was never administered) remains property of the estate. 11 U.S.C. § 554(d).

In this case, any of Drew's II's claims that were properly scheduled under § 521(a)(1) were abandoned by operation of law under § 554(c), but those claims that were not properly scheduled remain property of the estate under § 554(d). This would be an easy issue to decide if the Furlongs had listed every theory of recovery they intended to pursue against Donarumo, or had more broadly described their cause of action as claims arising from the sale of Drew's I, instead of scheduling "Claims for Breach of Contract (Andrew Donarumo et al.)." However, those are not the facts we have, and we are left with the task of addressing what level of detail is required for proper scheduling.

While a legal claim that is totally unscheduled may not be abandoned by operation of law under § 554(c), Jeffrey v. Desmond, 70 F.3d 183, 186 (1st Cir. 1995), a partially-scheduled

---

[4] Property may also be abandoned after notice and hearing under § 554(a), which is the manner in which the Trustee abandoned the claims in the personal bankruptcy estate here, or by court order under § 554(b).

-10-

claim requires a more careful inquiry into whether the requirements of § 521(a)(1) were met.

Once an asset is referenced on a schedule, § 521(a)(1) does not specify the level of detail with which that asset must be described. See Furlong I, 437 B.R. at 718 (quoting Kuehn v. Cadle Co., No. 5:04-cv-432-Oc-10GRJ, 2007 WL 809656, at *4 (M.D. Fla. March 15, 2007)) ("The statute does not provide any guidance as to the level of specificity required" when listing assets on a bankruptcy schedule.) (alteration omitted); see also In re Mohring, 142 B.R. 389, 395 (Bankr. E.D. Ca. 1992) ("There are . . . no bright-line rules for how much itemization and specificity is required" on a bankruptcy schedule.), aff'd, 153 B.R. 601 (B.A.P. 9th Cir. 1993), aff'd, 24 F.3d 247 (9th Cir. 1994).

While a "debtor has a duty to prepare schedules carefully, completely, and accurately," generally, an asset is adequately scheduled if its description exhibits "reasonable particularization under the circumstances." In re Mohring, 142 B.R. at 394-95; see also Payne v. Wood, 775 F.2d 202, 205 (7th Cir. 1985)("It would be silly to require a debtor to itemize every dish and fork . . . ."). As "investigation is part of the Trustee's duties under § 704," see In re Bonner, 330 B.R. 880, at *5 (B.A.P. 6th Cir. 2005); 11 U.S.C. § 704(a)(4), a debtor is required only to "do enough itemizing to enable the trustee to determine whether to investigate further," Payne, 775 F.2d at 207.

-11-

Here, the Trustee was not only on inquiry notice as to the extent of the asset, he was on actual notice.[5] The Trustee was able to conduct his investigation into the value of the claims with the help of the sixteen-count draft complaint before determining that it would not be cost-effective to pursue the claims.

Further, the Bankruptcy Code does not require every component of a cause of action to be spelled out on a debtor's schedule. See Bonner, 330 B.R. 880, at *4 (where debtors scheduled "Auto Accident Claim," it was common knowledge that a personal injury suit could arise out of the same underlying facts, and the trustee was on notice to investigate, satisfying the requirements of § 521); cf. Tilley v. Anixter, Inc., 332 B.R. 501, 510-11 (D. Conn. 2005) (reasoning that the scheduling of one claim does not amount to the proper scheduling of another if the first claim does not put the trustee on inquiry notice to investigate the second).

Here, the Furlongs described their claims with reasonable particularity and it is common knowledge that business tort claims and claims under Mass. Gen. Laws ch. 93A might arise out of the same underlying facts as a claim for breach of contract;[6]

_____

[5] Additionally, creditors attending the § 341 creditors' meeting were on actual notice of the claims after they were described by Mr. Furlong in greater detail than on the Schedule B.

[6] We do not address the claims for negligent and intentional infliction of emotional distress in the context of the corporate bankruptcy, as those claims appear to be brought by the Furlongs in their individual capacities.

therefore, the Trustee was on inquiry notice to investigate the extent of the asset. Moreover, the Trustee, having actual knowledge of the contents of the draft complaint, was able to complete his investigation into the value of the claims before making the decision to abandon the claims from the estate. Therefore, all of Drew's II's claims against Donarumo were properly scheduled under § 521(a)(1) and were abandoned by operation of law under § 554(c) when the corporate bankruptcy case was closed.

## C. The Personal Bankruptcy Abandonment

Donarumo and Murray Supply challenge the lower courts' determinations that the state court claims held by the personal bankruptcy estate that were not specifically named in the Notice of Intention to Abandon were in fact abandoned under 11 U.S.C. § 554(a). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Spenlinhauer, 261 F.3d at 117.

Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). However, a hearing is unnecessary if no party in interest requests one. Id. § 102(1). In this case, the Trustee filed a Notice of Intention to Abandon in the personal bankruptcy case on November 6, 2007. No parties in

interest objected or requested a hearing, and the bankruptcy court approved the Notice on November 30, 2007.

Donarumo and Murray Supply argue that only the claims specifically named in the "Reasons for Abandonment" section of the Notice were abandoned under § 554(a). It is true that "a trustee's intent to abandon an asset must be clear and unequivocal." Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 123 (2d. Cir. 2008); see also In re the Sire Plan, Inc., 100 B.R. 690, 693 (Bankr. S.D.N.Y. 1989) ("[A]ny clear manifestation of the trustee's intent to abandon property will suffice.") (emphasis in original). But here, the Notice stated the Trustee's clear intent "to abandon a cause of action against Andrew Donarumo et al." While the Trustee's description of the contours of the cause of action in the "Reasons for Abandonment" section could have been crisper, his intent to abandon all the claims held by the personal bankruptcy estate was obvious.[7] Despite only referring specifically to

---

[7] Both Chartschlaa and Sire Plan involved trustees whose actions made it difficult to deduce whether they intended to go forward with an abandonment at all. See Chartschlaa, 538 F.3d at 120-21 (trustee first filed a notice of abandonment and then, before the abandonment was approved, asked the court to take no action on the abandonment); Sire Plan, 100 B.R. at 692-93 (trustee stated in interim report that asset had no current marketable value, but took no specific action on abandonment). Here, there is no question that the Trustee intended the abandonment to go forward.

It is also important to note that the description of the claims on the Schedule B ("Claims for Breach of Contract") does not define the scope of the "cause of action" referred to in the Notice. Even unscheduled claims may be abandoned pursuant to

-14-

"misrepresentation" and "other business related tort[s]" in his "Reasons for Abandonment," the Trustee made clear that the cause of action involved multiple theories of recovery "ar[ising] from the purchase of a business known as Drew's Plumbing and Heating, Inc. II." As the bankruptcy court ably recited:

> [A]s painful as [the Notice] is to read, its meaning is unambiguous: <u>The estate holds claims against Donarumo and perhaps others, arising from the purchase of a business that came to be known as Drew's Plumbing; and the Trustee notices parties in interest of his intention to abandon those claims, based on his determination, made after investigation, that the claims have no or negligible value to the estate.</u>

<u>Furlong I</u>, 437 B.R. at 720 (emphasis in original).[8] The lower courts were correct in finding that the Trustee's intent to abandon

---

§ 554(a). See <u>Calabrese</u> v. <u>McHugh</u>, 170 F. Supp. 2d 243, 256 (D. Conn. 2001); <u>Tschirn</u> v. <u>Secor Bank</u>, 123 B.R. 215, 218 (Bankr. E.D. La. 1991). Therefore, regardless of the schedule, the Trustee's intent to abandon all of the claims is dispositive, especially where the creditors had prior notice of the extent of the claims after the § 341 creditors' meeting.

[8] The Trustee's intent to abandon all claims is also evidenced in later statements. In an affidavit submitted to the bankruptcy court on March 1, 2010, the Trustee stated that "all ownership and control of the claims," which included "a range of business tort claims as well as breach of contract claims," in both bankruptcy estates was "relinquished" to the Furlongs and Drew's II. In a second affidavit submitted on April 7, 2010, the Trustee made clear his intent to abandon, via the Notice, "the Donarumo litigation." At the April 14, 2010 hearing on the Motion to Verify before the bankruptcy court, the Trustee stated that he considered the various theories of recovery, as well as the corporate and personal bankruptcies, interchangeable. However, none of these statements affects our conclusion that the Notice of Intention to Abandon itself was sufficient to abandon all claims against Donarumo that were held by the personal bankruptcy estate.

-15-

all state court claims under § 554(a) was clear and unequivocal, and that all of the claims were therefore abandoned when the bankruptcy court approved the Notice.

## D. The Automatic Stay

Donarumo and Murray Supply challenge the holding below that the transfer of Drew's II's claims to the Furlongs personally was not a violation of the automatic stay. Again, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Spenlinhauer, 261 F.3d at 117.

To review, before Drew's II filed for bankruptcy, it surrendered to its secured lender, Key Bank, its tangible and intangible assets. Key Bank then sold those assets to Gem Plumbing. Because of the possibility that Drew's II's "general intangibles" included the claims against Donarumo, Gem Plumbing assigned any rights in the claims back to the Furlongs and Drew's II. The Furlongs, acting as directors at a meeting of the board of Drew's II at which they were the only attendees, assigned Drew's II's interest in these claims back to themselves personally.

Donarumo and Murray Supply argue that this transfer of Drew's II claims was a violation of the automatic stays in both the corporate bankruptcy and the personal bankruptcy. Both of these arguments fail.

A pending bankruptcy petition "operates as a stay . . . of . . . any act to obtain possession of property of the estate or

-16-

of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). However, the stay ends when the bankruptcy estate is closed, id. § 362(c)(2)(A), and the stay is inapplicable to property that has been removed from the estate, id. § 362(c)(1).

At the time of the transfer of the claims from Drew's II to the Furlongs individually, the Drew's II corporate bankruptcy case had long been closed, and thus the automatic stay on transfers of its assets was dissolved under § 362(c)(2)(A). Though the automatic stay in the personal bankruptcy estate was still effective, we agree with the bankruptcy court that an automatic stay "does not extend to the assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock." Furlong I, 437 B.R. at 721.[9]

---

[9] This proposition is well-settled. See Kreisler v. Goldberg, 478 F.3d 209, 214-15 (4th Cir. 2007) (shareholder's interest in corporation, which was a part of the bankruptcy estate, did not give that shareholder any direct interest in assets of corporation, which were outside of the bankruptcy estate and not subject to the automatic stay, even where actions regarding that asset might affect the value of the stock); Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1205-06 (3d Cir. 1991) (formal distinctions between debtor and non-bankrupt corporation are maintained for purposes of the automatic stay); In re Winer, 158 B.R. 736, 743 (N.D. Ill. 1993) (regardless of a "close nexus" between debtors and non-debtor entity, non-debtor entity is not subject to automatic stay); Pers. Designs, Inc. v. Guymar, Inc., 80 B.R. 29, 30 (E.D. Pa. 1987) (even where bankruptcy debtor is 100% stockholder in non-bankrupt corporation, automatic stay does not apply to corporation).

Donarumo and Murray Supply also argue that the automatic stay in the personal bankruptcy was violated because the Furlongs "used" the Drew's II stock in transferring to themselves the claims against Donarumo, Drew's II's sole remaining asset. See 11 U.S.C. § 363(b)(1); In re Consol. Auto Recyclers, Inc., 123 B.R. 130, 140 (Bankr. D. Me. 1991) (voting of shares constitutes "use" under § 363). We disagree. Though Massachusetts law requires shareholder approval of the transfer "of all, or substantially all, of [a corporation's] property," see Mass. Gen. Laws ch. 156D, § 12.02(a), the Furlongs were acting in their capacity as directors of Drew's II, not shareholders, when they effectuated the transfer. Because they took no actions as shareholders, they did not attempt to vote or use the Drew's II stock in any way. There was no violation of the automatic stay.[10]

**E. The Drew's II Stock**

The Furlongs challenge the holding that the Drew's II stock remains a part of the personal bankruptcy estate, as never having been abandoned. We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Spenlinhauer, 261 F.3d at 117.

---

[10] Because, as discussed below, the stock remains within the personal bankruptcy estate, the Trustee may be able to bring a derivative action in state court against the Furlongs for improper transfer of the claims. However, that is for another court to decide on another day.

-18-

The Furlongs scheduled their 100% stock ownership in Drew's II as an asset in their personal bankruptcy. As a part of the Motion to Verify, the Furlongs moved to compel abandonment of the stock under § 554(b). While the bankruptcy court never directly addressed the § 554(b) motion, it did conclude that "there may yet be value in the stock of Drew's Plumbing,"[11] and that the stock remained property of the estate. Furlong I, 437 B.R. at 721. Additionally, the Trustee never filed a notice of intent to abandon the stock under § 554(a), and the personal bankruptcy estate remains open, so the stock was never abandoned by operation of law under § 554(c). Therefore, the stock was never formally abandoned under any provision of § 554 and continues to be property of the personal bankruptcy estate.

## III. Conclusion

Finding no error in the bankruptcy court's decision, we affirm.

---

[11] Section 554(b) provides that a court may order the abandonment of property "that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).