NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

**BAP NO. EB 20-023**

---

**Bankruptcy Case No. 19-10641-MAF**

---

**GREGORY ATHERTON O'NEIL,**
**Debtor.**

---

**ANDREW M. DUDLEY, Chapter 13 Trustee,**
**Appellant,**

**v.**

**GREGORY A. O'NEIL,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Maine**
**(Hon. Michael A. Fagone, U.S. Bankruptcy Judge)**

---

**Before**
**Hoffman, Panos, and Katz,**
**United States Bankruptcy Appellate Panel Judges.**

---

**Andrew M. Dudley, Esq., on brief for Appellant.**
**No brief filed for Appellee.**

---

**May 21, 2021**

---

**Per Curiam.**

The chapter 13 trustee, Andrew M. Dudley (the "Trustee"), appeals from the bankruptcy court's order overruling his objection to the debtor's claimed exemption for a vehicle under Maryland law. For the reasons set forth below, we conclude that the Trustee does not have appellate standing and that this appeal has become moot. Therefore, this appeal will be **DISMISSED** for lack of jurisdiction.

## BACKGROUND

### I.      The Bankruptcy Proceedings

Gregory O'Neil (the "Debtor") filed a chapter 13 petition in the U.S. Bankruptcy Court for the District of Maine in December 2019. In his bankruptcy filings, he indicated he lived in Maine as of the petition date, but he had lived in Maryland from October 2016 to February 2018 and New Hampshire from February 2018 to August 2019, before moving to Maine in August 2019.

In his bankruptcy schedules, the Debtor claimed exemptions for both real and personal property. The only exemption at issue in this appeal is a $5,000 wildcard exemption claimed in a 2000 Porsche 911 (the "Porsche") under Md. Code Ann., Cts. & Jud. Proc. § 11-504(f)(1)(i)(1).

The Trustee objected to several of the Debtor's claimed exemptions, including the exemption for the Porsche. He asserted that, pursuant to the 730-day look-back period set forth in § 522(b)(3)(A), the Debtor was required to utilize Maryland law when claiming exemptions.[1] He maintained, however, that while the Debtor was eligible for some exemptions under Maryland law, he was not entitled to exempt the Porsche under Md. Code Ann. § 11-504(f)(1)(i)(1) because that provision is limited to domiciliaries of Maryland, and the Debtor did

---

[1] Unless expressly stated otherwise, all references to specific statutory sections are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

not live in Maryland on the petition date. He also asserted that because *some* exemptions under the Maryland exemption scheme were available to the Debtor, he was not eligible to claim federal exemptions under the "hanging paragraph" of § 522(b)(3) which applies only when the effects of the domiciliary requirements of § 522(b)(3) render a debtor ineligible to claim "any" exemptions.

At a hearing on the Trustee's objection, the Debtor countered that because § 522(b)(3)(A) required him to utilize Maryland exemptions, he should be deemed to have been domiciled in Maryland on the petition date for purposes of that state's exemption statute. But he later admitted, in a supplemental brief, that the domiciliary requirement of the Maryland statute "eliminate[d]" his ability to claim an exemption in the Porsche. The Debtor noted, however, that disallowance of his claimed exemption was "unlikely to materially impact" his bankruptcy case as his priority claims greatly exceeded the value of his nonexempt assets.[2] He requested that the bankruptcy court either overrule the Trustee's objection or, alternatively, permit him to amend his exemptions.

On June 19, 2020, the bankruptcy court issued an order sustaining the Trustee's objection to several of the Debtor's exemptions in property other than the Porsche and overruling the Trustee's objection to the claimed exemption in the Porsche. The court held that, "as a matter of federal law," the Debtor met the domiciliary requirement of the Maryland statute because § 522(b)(3)(A) "creates a legal fiction that the Debtor was domiciled in Maryland on the petition date" and, therefore, he was entitled to claim exemptions under Md. Code Ann. § 11-504(f)(1)(i)(1). In re O'Neil, No. 19-10641, 2020 WL 3634387, at *3 (Bankr. D. Me. June 19, 2020).

---

[2]  In chapter 13 cases, priority claims typically must be paid in full. See further discussion below.

It also ruled that, even if the Debtor were not deemed to be domiciled in Maryland as a matter of federal bankruptcy law, the Trustee's objection to the exemption in the Porsche "would still fall short," as "[t]he most sensible reading of [§] 522(b)(3)(A) leads to the conclusion that 'Congress made state law exemptions applicable as a matter of federal law[,]' deferring to the states 'with respect to the content of those exemptions, but not as to their applicability.'" Id. (quoting Laura B. Bartell, The Peripatetic Debtor: Choice of Law and Choice of Exemptions, 22 Emory Bankr. Dev. J. 401, 425 (2006)). While the bankruptcy court recognized that numerous courts have interpreted § 522(b)(3) to require a strict application of the specific domiciliary restrictions in state exemption laws, it disagreed with that approach, stating: "[A]pplying the exemption laws of the state specified in [§] 522(b)(3)(A) without regard to any domiciliary restrictions in that state law is consistent with both the text of [§] 522 and with the axiom that exemption laws are to be construed liberally in favor of the debtor." Id.

The Trustee appealed. The Debtor did not file an appellate brief and has not participated in this appeal.

## APPELLATE JURISDICTION

Before addressing the merits of an appeal, we must determine whether we have jurisdiction, even if the question is not raised by the litigants. Formatech, Inc. v. Sovereign Bank (In re Formatech, Inc.), 483 B.R. 363, 367 (B.A.P. 1st Cir. 2012) (citation omitted).

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2, cl.1; see also Chafin v. Chafin, 568 U.S. 165, 171 (2013). "Spawning from that limitation, the frequently intertwined doctrines of standing, ripeness, and mootness all probe whether a subsisting controversy warrants judicial intervention." Religious Sisters of Mercy v. Azar, No. 3:16-cv-00386, 2021 WL 191009, at *11

4

(D.N.D. Jan. 19, 2021) (citing Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975)).  This appeal raises both standing and mootness concerns.  We begin with a review of both doctrines.

**A.     Standing**

"One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  Blum v. Holder, 744 F.3d 790, 795 (1st Cir. 2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)) (internal quotation marks omitted).  Accordingly, "[t]hose who seek to invoke the jurisdiction of the federal courts must satisfy Article III's threshold case or controversy requirement by demonstrating that they have 'a personal stake in the outcome of the claim asserted.'"  United States v. 434 Main St., Tewksbury, Mass., 862 F. Supp. 2d 24, 32 (D. Mass. 2012) (quoting Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006)).  To satisfy this requirement, there must be: (1) an "injury in fact"; (2) that is "fairly traceable to the challenged action"; and (3) that likely "will be redressed by a favorable decision."  Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 222 (1st Cir. 2019) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  Significantly, "the injury in fact 'must be concrete and particularized and actual or imminent, not conjectural or hypothetical.'"  N.H. Lottery Comm'n v. Rosen, 986 F.3d 38, 50 (1st Cir. 2021) (quoting Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017)).  "In addition to these Article III prerequisites, prudential concerns ordinarily require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party) . . . ."  Pagán, 448 F.3d at 27 (citations omitted).

Appellate standing in bankruptcy cases is even more restrictive than Article III standing. Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001) (citations omitted); see also Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 741 (3d Cir. 1995) ("[T]he standing requirement in bankruptcy appeals is more restrictive than the 'case or controversy' standing requirement of Article III, which need not be financial and need only be fairly traceable to the

alleged illegal action.") (citations omitted) (internal quotation marks omitted). In bankruptcy appeals, standing is limited to a "person aggrieved." Spenlinhauer, 261 F.3d at 117 (citation omitted). Standing under the "person aggrieved" standard exists "only where the challenged order directly and adversely affects an appellant's pecuniary interests." Id. at 117-18 (citation omitted); see also Donarumo v. Furlong (In re Furlong), 660 F.3d 81, 86 (1st Cir. 2011); Davis v. Cox, 356 F.3d 76, 92 n.15 (1st Cir. 2004). "The nature of bankruptcy litigation, with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court, mandates that the right of appellate review be limited to those persons whose interests are directly affected." In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987) (citations omitted). "A party's pecuniary interests are affected if the order diminishes the appealing party's property, increases its burdens, or detrimentally affects its rights." In re Formatech, Inc., 483 B.R. at 368 (citation omitted). Further, to be directly affected by the order, the appellant's pecuniary interests "cannot be merely contingent or speculative." Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food, Corp.), 565 B.R. 450, 459 (B.A.P. 1st Cir. 2017) (citations omitted).

B.      **Constitutional Mootness**

Like standing, constitutional mootness also arises from the case-or-controversy requirement of Article III. Castaic Partners II, LLC v. DACA-Castaic, LLC (In re Castaic Partners II, LLC), 823 F.3d 966, 968 (9th Cir. 2016) (citation omitted). When there is no case or controversy within the meaning of Article III, federal courts "lack constitutional authority to decide" the case. See Redfern v. Napolitano, 727 F.3d 77, 83 (1st Cir. 2013) (citation omitted). Under these circumstances, "dismissal of the action is compulsory." Id. at 84 (citation omitted) (internal quotation marks omitted).

"A case becomes moot—and therefore no longer a 'Case' and 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Matt v. HSBC Bank USA, N.A., 783 F.3d 368, 372 (1st Cir. 2015) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)); see also Pinto-Lugo v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 987 F.3d 173, 181 (1st Cir. 2021) (stating that a court must dismiss an appeal as moot under Article III when it is "impossible for a court to grant any effectual relief whatever," leaving the petitioner with no "continuing stake in [the] dispute's outcome" necessary to create a "live controversy") (quoting Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1660-61 (2019)). "Courts cannot, consistent with Article III, wander into the 'realm of the advisory and the hypothetical.'" Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) (quoting Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 615 (1st Cir. 1993)). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" Chafin, 568 U.S. at 172 (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)). "The 'case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.'" Id. (quoting Lewis, 494 U.S. at 477). "[I]t is not enough that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit." Id. (citation omitted) (internal quotation marks omitted).

"Mootness is closely related to standing . . . ." Horizon Bank & Tr. Co., 391 F.3d at 53 (citation omitted); see also Russell v. Harris Cnty., No. H-19-226, 2020 WL 6585708, at *15 (S.D. Tex. Nov. 10, 2020) (stating that standing is "intertwined" with mootness because both require an "Article III case or controversy") (citations omitted). The Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal

7

interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)); see also Smith v. Tarrant Cnty. Coll. Dist., 694 F. Supp. 2d 610, 616 (N.D. Tex. 2010) ("[T]he doctrine of standing requires the plaintiff to have a personal interest in the suit by having suffered an injury in fact, [and] the doctrine of mootness requires that the controversy created by the injury exist throughout the litigation.") (citing Geraghty, 445 U.S. at 397).

The First Circuit has stated that a "fundamental polic[y]" underlying the case or controversy requirement of Article III is that "the courts, for reasons of judicial economy, ought not to decide cases in which the controversy is hypothetical, a judgment cannot grant effective relief, or the parties do not have truly adverse interests." Marchand v. Dir., U.S. Prob. Office, 421 F.2d 331, 332 (1st Cir. 1970). Accordingly, "when the circumstances out of which a controversy arise change so as to raise doubt concerning the adversity of the parties' interests, courts ordinar[i]ly dismiss cases as moot, regardless of the stage to which the litigation has progressed." Id.; see also ACLU of Mass. v. U.S. Conf. of Catholic Bishops, 705 F.3d 44, 52-53 (1st Cir. 2013) (stating that "[i]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case") (citations omitted).

"The difference between an abstract question and a controversy . . . is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." United States v. Amoskeag Bank Shares, Inc. (In re Amoskeag Bank Shares, Inc.), 239 B.R. 653, 659 (D.N.H. 1998) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). "The most important factors the court must balance are 'the fitness of the issues for judicial decision and the hardship to the parties of

8

withholding court consideration.'" <u>Id.</u> (quoting <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 149 (1967)). "The critical question in determining whether an issue is fit for judicial decision is whether the claim 'involves events that may not occur as anticipated, or indeed may not occur at all.'" <u>Id.</u> (quoting <u>Lincoln House, Inc. v. Dupre</u>, 903 F.2d 845, 847 (1st Cir. 1990)).

## II.     Analysis

Applying these principles, we must now consider whether there is an actual case or controversy before us which "is fit for judicial decision" in light of certain developments that have occurred since the entry of the challenged order.

In order to confirm a chapter 13 plan, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim [cannot be] less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]" 11 U.S.C. § 1325(a)(4). That provision is known as the "best interests of creditors test." <u>In re Edwards</u>, No. 11-80962, 2012 WL 3584769, at *3 (Bankr. W.D. La. Jan. 5, 2012); <u>see also</u> <u>In re Benitez Lajaras</u>, No. 10–04613 BKT, 2011 WL 1238826, at *1 (Bankr. D.P.R. Mar. 28, 2011). A chapter 7 trustee distributes non-exempt property of the estate in an order pursuant to § 726, and priority claims under § 507 are the first claims paid by a chapter 7 trustee.[3] <u>See</u> 11 U.S.C. § 726. Unlike in a chapter 7 liquidation, debtors in a chapter 13 case are required to pay their § 507 priority claims in full over the life of the plan, unless the holder of the claim agrees to a different treatment. <u>See</u> 11 U.S.C. § 1322.

At the time the bankruptcy court issued the exemption order, the Debtor had proposed a chapter 13 plan, but there were pending objections to be resolved and the plan had not yet been confirmed. As the allowance or disallowance of the Debtor's claimed exemptions were

---

[3] The one rare exception is when there is a claim pursuant to a § 510 subordination.

9

significant to a liquidation analysis under § 1325(a)(4), the Trustee, at that time, had a "personal stake" in the outcome of his objection to exemptions. However, on October 22, 2020—four months after the entry of the Exemption Order and the commencement of this appeal—the bankruptcy court confirmed the Debtor's chapter 13 plan of reorganization. The plan is a "100% plan," which means all allowed unsecured claims will be paid in full. Significantly, the plan pays priority claims of the type in § 507 in the amount of $54,616.95. The $54,616.95 in priority claims exceeds the value of the debtor's non-exempt assets by significantly more than $5,000. Thus, the plan would comply with the "best interests of creditors test" of § 1325(a)(4) even if the $5,000 exemption for the Porsche were disallowed. See Campbell v. Stewart (In re Campbell), 313 B.R. 313, 321-22 (B.A.P. 10th Cir. 2004) (recognizing that "[c]hapter 13 debtor, remaining in possession of all property . . . , claims exemptions to facilitate a determination as to whether his or her plan is confirmable as being in the best interests of creditors within the meaning of § 1325(a)(4)" and that "[i]n some instances," the allowance or disallowance of an exemption "will have no impact on the best interests of creditors test in § 1325(a)(4)").

At oral argument, when questioned about the significance of the Debtor's failure to defend his claimed exemption in this appeal, the Trustee acknowledged that a decision in this appeal as to the merits of the allowed exemption for the Porsche would have no impact on the Debtor's chapter 13 case. Accordingly, the Trustee admitted, he was not pursuing this appeal to benefit the chapter 13 estate, but rather so that the equity in the Porsche would be available for distribution to creditors if the case were to be converted to chapter 7 in the future. He further indicated that his purpose in appealing was to seek guidance from an appellate court as to how to properly apply § 522(b)(3) in future cases. The Debtor similarly recognized in his supplemental brief below that disallowance of the exemption was "unlikely to materially impact [his] case."

The Debtor's apathy regarding the allowance or disallowance of his asserted exemption in the Porsche is further evidenced by his decision not to participate, in any fashion, in this appeal.

As the party invoking federal jurisdiction, it was incumbent upon the Trustee to demonstrate the continued existence of a live controversy. See United States ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 54 (1st Cir. 2009) ("The proponent of federal jurisdiction bears the burden of proving its existence by a preponderance of the evidence."). Under the present circumstances, we are hard-pressed to find that an actual case or controversy between sufficiently adverse parties remains in this appeal. Nor is there any present cognizable hardship or prejudice to the Trustee if the issue on appeal is not decided at this time. See In re Amoskeag Bank Shares, Inc., 239 B.R. at 659 (stating that one of the "most important factors" in determining whether there is a case or controversy warranting judicial review is "the hardship to the parties of withholding court consideration"). Both the Trustee and the Debtor have conceded that the allowance or disallowance of the claimed exemption will have no impact on the Debtor's chapter 13 estate. As discussed above, federal courts are not in the business of issuing advisory opinions. See Flast v. Cohen, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (citation omitted).

While we recognize that things could change down the road—if, for example, the case were converted to chapter 7—that possibility is hypothetical at this juncture and does not give rise to a present, live controversy between these two parties.[4] Conversion is always a possibility

---

[4] Not only is a conversion to chapter 7 purely hypothetical, it is unclear to what extent the issue might resurface in a converted chapter 7 case in light of Bankruptcy Rule 1019(2)(B). See Fed. R. Bankr. P. 1019(2)(B) (establishing a new period for filing objections to exemptions after conversion to chapter 7, unless the case converted more than one year after the entry of the first order confirming a plan).

in the post-confirmation life of a chapter 13 case, but it does not justify the present use of judicial resources to resolve an issue the impact of which, the Trustee readily agrees, depends entirely on events that may not occur at all. See In re Amoskeag Bank Shares, Inc., 239 B.R. at 659 (stating that an issue is not "fit for judicial decision" if it is based on "events that may not occur as anticipated, or indeed may not occur at all") (quoting Lincoln House, Inc., 903 F.2d at 847). In other words, we are not required to adjudicate in the present to account for every conceivable eventuality in the future. Nor should we opine about whether our decision not to review the bankruptcy court's order could cause potential harm to a non-existent party—a chapter 7 trustee in a hypothetical converted case—who is not presently before us and might not ever come before us.[5] In short, we conclude that there is no longer a live dispute between the parties and, therefore, this appeal is moot.

For the same reasons, we conclude that the Trustee lacks appellate standing as he has failed to demonstrate that the allowance of the exemption for the Porsche directly and adversely affects his pecuniary interests. The record reflects, and the Trustee agrees, that disallowance of the exemption would have no impact on the chapter 13 case or the confirmed plan. Although the Debtor's exemption might have significance to a chapter 7 trustee in a converted case, the Trustee cannot rest his claim for relief in this appeal on the interests of a hypothetical chapter 7 trustee. See Pagán, 448 F.3d at 27. In short, the Trustee has failed to establish that he is a person aggrieved with standing to appeal.

---

[5] Mindful of the prohibition against adjudicating on speculative issues, among the issues we decline to consider is the effect, if any, of the law of the case and/or issue preclusion doctrines upon a future hypothetical chapter 7 trustee.

12

## **CONCLUSION**

For the foregoing reasons, we conclude that the Trustee has failed to demonstrate that there is live case or controversy warranting appellate review or that he is a person aggrieved with standing to appeal.  Accordingly, we lack jurisdiction to hear this appeal, and it is **DISMISSED**.