## In re BEKER INDUSTRIES CORPORATION: and Beker Phosphate Corporation, Debtors.

### No. 86 Civ. 8701 (RJW).

United States District Court, S.D. New York.

July 18, 1988.

tive status in light of the failed agreement under section 364(c)?

Weil, Gotshal & Manges, New York City, for appellants; Marvin E. Jacob, Ellen R. Werther, Sheryl H. Haberman, of counsel.

Kronish, Lieb, Weiner & Hellman, New York City, for debtors; William J. Rochelle, of counsel.

ROBERT J. WARD, District Judge.

Commercial Credit Business Loans, Inc., Commercial Credit International Banking Corporation, and the National Bank of Canada (collectively, "the Secured Lenders" or "the Banks"), appeal from a decision of the bankruptcy court denying the motion of Beker Industries Corporation and Beker Phosphate Corporation (collectively, "Beker" or "the Debtors") for court approval to sell certain assets pursuant to 11 U.S.C. § 363(b)(1), (f), or, in the alternative, to abandon those assets pursuant to 11 U.S.C.

§ 554. 64 B.R. 900. The bankruptcy court, in denying the motion, conditionally ordered that the costs of maintaining the assets be recovered by the Debtors, pursuant to 11 U.S.C. § 506(c). *Id.* at 910. It is this portion of the bankruptcy court's decision from which the Secured Lenders appeal.

## BACKGROUND

The assets involved in the instant appeal consist of a phosphate fertilizer manufacturing facility located in Conda, Idaho ("the Conda Plant"), together with Beker's 50% interest in a partnership with Western Cooperative Fertilizers (U.S.) Inc. owning and operating a phosphate mine that supplies the raw materials for use at the Conda Plant (the Conda Plant and the partnership interest are jointly referred to as "the Conda Assets"). *Id.* at 902. The Secured Lenders have a $10 million priority lien on the Conda Assets. The Official Committee of Debentureholders ("the Committee") represents the holders of Beker's 15⅞% Secured Subordinated Sinking Fund Debentures, who have a subordinate lien on the Conda Assets securing principal and interest in the amount of some $72 million. *Id.* There is no dispute that the aggregate of creditors' liens on the Conda Assets exceeds their value and that the Debtors have no equity in the Conda Assets. *Id.* at 903.

The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on October 21, 1985. The Debtors incurred large continuing operating losses from the Conda Assets, and on May 19, 1986 announced that all manufacturing operations would be terminated and that they would seek to sell the Conda Assets. Transcript of Hearing before the Bankruptcy Court, conducted August 11 and 12, 1986 ("Tr."), at 26, 28, 38–57, 89–93, 114–115, 129. A prospective purchaser was found who offered to purchase the Conda Properties for $21 million, on the condition that the sale closed prior to August 1, 1986. The offer was reduced to $10 million if the sale closed after August 1, 1986, and the price declined further to $500,000 if the sale were consummated after September 1, 1986. *Id.* at 63–67, 156–57.

The Debtors thereafter on July 14, 1986 filed a motion seeking bankruptcy court approval of the sale of the Conda Assets at public auction for a minimum upset price of $21 million. In the alternative, the Debtors sought approval of a plan to abandon the Conda Assets, lest the Debtors be left, absent a sale, with the burden of carrying assets in which they had no equity. The Equity Committee, the Unsecured Creditors' Committee and the Secured Lenders supported the planned sale of the Conda Assets. Response of Unsecured Creditors' Committee, filed August 12, 1986; Statement of Position of Equity Security Holders' Committee, filed August 8, 1986; Statement of Secured Lenders, filed August 11, 1986. The Debentureholders, together with the Indenture Trustee, opposed the sale. Objection of Indenture Trustee, filed July 21, 1986; Debentureholders' Committee's Statement, filed July 22, 1986. The Secured Lenders, though favoring the sale, were concerned that simultaneous consideration of the motions to abandon and to sell would discourage potential purchasers, and urged the bankruptcy court to defer consideration of the motion to abandon until it had ruled on the motion to sell. Statement of Secured Lenders, filed August 11, 1986. The bankruptcy court initially directed that an auction be held August 1, 1986, Order Establishing Procedure for Sale or Disposition of Debtors' Idaho Assets, issued July 14, 1986, but after receiving opposition to the sale, scheduled an evidentiary hearing on the motion, which was conducted August 11 and 12, 1986. *See* Tr.

After conducting the evidentiary hearing, the bankruptcy court issued its decision September 22, 1986, denying the Debtors' motion to sell or to abandon the Conda Assets and conditionally ordering that the costs of maintaining the properties could be recovered by the Debtors. 64 B.R. at 910.

The Bankruptcy Court first addressed the motion to sell the Conda Assets, determining that approval of a sale under section 363(b) was inappropriate under the circumstances. *Id.* at 905–07. Although a

reorganization plan was not imminent, the case was at a crucial stage where the parties would be making key decisions necessarily and dramatically affecting the contents of a plan and the ability to reorganize. *Id.* at 906. The court opined that the Conda Assets might provide an important contribution to a future reorganization plan, attracting needed investment capital. *Id.* at 906–07. Furthermore, at the time of the bankruptcy court's decision, the highest price offered for the Conda Assets was $500,000, providing no real justification for the sale. *Id.* at 907. The sale would not alleviate the Debtors' interest payments, but would simply increase the amount of unsecured debt to be satisfied from a diminished estate. *Id.* The court considered the prospects of any further decrease in value to be immaterial, but believed the Conda Assets might increase in value. *Id.* Because the Debtors had sufficient funds available to carry the Conda Assets for several months until the expiration of their financing agreement with the Banks, the prospect of saving the interim maintenance costs was insufficient to justify the sale at that time. *Id.* Finally, the court noted the absence of any compelling circumstances permitting a sale. *Id.*

Turning to the motion to abandon pursuant to section 554(a), the court concluded likewise that there was no good business reason for abandonment at that time in light of the overall posture of the case as a whole. *Id.* at 908–12. By charging the maintenance costs to the secured creditors pursuant to section 506(c), the court disposed of the Debtors' argument that denial of their motion would inappropriately saddle them with maintenance charges on a property in which they had no equity. *Id.* at 910. That portion of the bankruptcy court's ruling is the subject of the instant appeal.

The Secured Lenders filed their notice of appeal on November 13, 1986. The briefing schedule for this appeal was extended several times by stipulation of the parties. On July 31, 1987 the Debtors filed a motion to dismiss the appeal on the ground that the order below is interlocutory and not subject to appeal. Before the parties had completed briefing of the issues on appeal, the bankruptcy judge approved a sale of the Conda Assets effective July 24, 1987. Debtors' Memorandum of Law, filed July 31, 1987, at 17; Brief of Secured Lenders, filed August 31, 1987, at 21. The terms of that sale are not included in the record before this Court. The issue now to be decided is whether the bankruptcy court properly charged the Secured Lenders with the maintenance costs of the Conda Assets from July 14, 1986 until July 24, 1987.

## DISCUSSION

The Court turns first to the question of its jurisdiction to hear the instant appeal, and then considers whether section 506(c) authorized the bankruptcy court to shift costs to the Secured Lenders under the facts of the case. Because the Court, in its substantive analysis of section 506(c), has concluded that the bankruptcy court erred in shifting costs to the Secured Lenders, it need not consider their additional contentions that the bankruptcy court lacked authority to invoke section 506(c) absent a motion by an interested party and that the order was issued without notice to the Secured Lenders in violation of their right to due process.

### 1. *Jurisdiction*

As a preliminary matter, the Debtors challenge this Court's subject matter jurisdiction to hear the instant appeal. They argue that the decision of the bankruptcy court was not a final order, and that this Court should deny leave to appeal what they assert is an interlocutory order. The Secured Lenders, on the other hand, argue that the bankruptcy court's section 506(c) ruling is a final order from which they are entitled to appeal as of right.

 This Court's jurisdiction to hear appeals from decisions of the bankruptcy court is conferred by 28 U.S.C. § 158(a), which provides in part that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court from interlocutory orders and

decrees, of bankruptcy judges...." The finality requirement for appeals is less rigidly applied in bankruptcy than in ordinary civil litigation. *In re Johns–Manville Corp.*, 824 F.2d 176, 179 (2d Cir.1987). It is not required in the bankruptcy context that an order fully and finally resolve a case for the order to be considered final.

> "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of *discrete disputes within the larger case*," and that "a 'final judgment, order, or decree' under [the statute] includes an order that conclusively determines a separable dispute over a creditor's claim or priority."

*Id.* (citations omitted; emphasis in original; quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444, 445–46 (1st Cir.1983)). *But see In re Stable Mews Assocs.*, 778 F.2d 121, 122 (2d Cir.1985) (flexible approach to finality in bankruptcy proceedings may no longer be correct under the Bankruptcy Code).

Even when this relaxed finality requirement is applied to the case at hand, the Court concludes that the decision of the bankruptcy court, charging maintenance costs for the Conda Assets to the Secured Lenders, does not constitute a final order. Accordingly, the Secured Lenders may not, as a matter of right, appeal that order to this Court.

In urging their position that they are entitled to an appeal as of right from the bankruptcy court's 506(c) decision, the Secured Lenders rely heavily on two cases from the Second Circuit where the court reached the merits of appeals from 506(c) decisions. In neither case did the court discuss the finality of the decision appealed from. In *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir.1984) ("*Flagstaff I*"), the court decided the question whether section 506(c) authorized the payment of interim attorneys' fees under 11 U.S.C. § 330 from a fund subject to a super-priority lien. In *In re Flagstaff Foodservice Corp.*, 762 F.2d 10 (2d Cir.1985) ("*Flagstaff II*"), the court determined whether the bankruptcy judge could, under section 506(c), order that outstanding payroll taxes incurred during the debtor's attempted reorganization be paid from funds subject to a super-priority lien. Because a court must consider the question of its subject matter jurisdiction whether or not the issue is raised by the parties, *e.g., In re Stable Mews Assocs., supra*, 778 F.2d at 124–25, this Court will look to the *Flagstaff* cases for guidance on the question of finality, notwithstanding that the issue was not expressly discussed in either case.

The Second Circuit in *Stable Mews* addressed the finality of an interim award of fees to a Chapter 11 trustee and to the trustee's attorney. The trustee, who had appointed his own firm as attorney, applied for interim compensation pursuant to 11 U.S.C. §§ 326, 331 and 506(c). The court flatly held that "[a] decision approving a partial payment of fees to a trustee/attorney whose meter is still running simply is not ... a final decision." *Id.* at 122–23. In arguing that the decision was final and therefore appealable, the debtor had relied on *Flagstaff I*, which the *Stable Mews* court considered unpersuasive because the *Flagstaff I* court "never discussed the issue of jurisdiction over an interim fee award." *Id.* at 123. In light of this characterization of *Flagstaff I* by the *Stable Mews* court, the continued force of *Flagstaff I* on the issue of finality can be questioned. The *Stable Mews* court then distinguished *In re New England Carpet Co.*, 744 F.2d 16 (2d Cir.1984) on the ground that in *New England Carpet*, the court had considered an appeal from an order denying payment of a *final* fee award.

■ This Court derives from the Second Circuit authority that a decision under section 506(c) is considered final for purposes of appeal so long as it does not involve continuing services or obligations. In the instant case, the bankruptcy court ordered the Secured Lenders to pay the reasonable and necessary costs to maintain the Conda Assets if the Conda Assets "are ultimately not retained by the Debtor or a successor to it in a plan of reorganization." 64 B.R. at 912. Because of the multiple uncertainties and contingencies inherent in

the order of the bankruptcy court, it cannot after *Stable Mews* be considered a final order. The calculation of costs cannot rightly be considered a simply ministerial task, since prior to any determination of an amount due the court would have to decide that the assets were not retained by a successor to the Debtors, to what extent the costs were reasonable and necessary, and to what extent they benefited the Secured Lenders. *See, e.g.,* 3 Collier on Bankruptcy ¶ 506.06, at 506–54 (15th ed. 1987) ("Determinations of what costs and expenses were necessary in connection with and relate to the preservation and disposition of the subject property, the extent to which such costs and expenses were reasonable, and the extent to which the expenditure of such amounts benefitted the holder of the secured claim will all depend on the facts of the particular case."). The bankruptcy court's determination that the reasonable costs of maintaining the Conda Assets would fall within a particular range [1] does not render the final calculation of costs purely ministerial. Approval of a final bill would still call upon the deliberative powers of the bankruptcy court. Furthermore, the subsequent sale of the Conda Assets, which fixed a definite time period for responsibility over the maintenance costs, cannot alter the nature of the prior decision, which was not final when issued or when the notice of appeal was filed.

■■■ Although the courts of appeals have jurisdiction only over appeals from final decisions of the bankruptcy courts, 28 U.S.C. § 158(d),[2] the district courts may, upon granting leave to appeal, entertain appeals from interlocutory orders of the bankruptcy courts as well. *Id.* § 158(a). Leave to appeal is to be liberally granted where it can help the expeditious resolution of the case. *E.g., In re Johns–Manville Corp.,* 45 B.R. 833, 835 (S.D.N.Y. 1984). The standard to be applied in considering whether to grant leave to appeal an interlocutory order is found in 28 U.S.C. § 1292(b). Leave should be granted if there are controlling questions of law as to which there are substantial grounds for difference of opinion and if an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.* Considering all the circumstances of this case, the Court concludes that it should grant leave to appeal. There is substantial controversy surrounding the proper application of section 506(c), and the Court believes that a resolution of this question will promote the ultimate termination of the litigation. A final resolution of the question which party properly bears the responsibility for the substantial costs of maintaining the Conda Assets from July 14, 1986 until July 24, 1987 will permit the parties to direct their attention and energy to the remaining unresolved issues in the case, and will provide a firm basis for further proceedings. Accordingly, the Court will consider the merits of the instant appeal.[3]

---

1. The bankruptcy court declared that the reasonable costs of maintaining the Conda Assets would be from $269,000 to $280,000 for the first month and from $89,000 to $100,000 each month thereafter. 64 Bankr. at 904 n. 3.

2. 28 U.S.C. § 158(d) provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsection (a) and (b) of this section." *Compare* with section 158(a), quoted *supra.*

3. Appellants have not filed a motion for leave to appeal as is required by Bankr. Rule 8001(b), 11 U.S.C., when an appeal is made from an interlocutory order. However, Bankr. Rule 8003(c) expressly provides that if a required motion for leave to appeal is not filed, the district court may nevertheless grant leave to appeal. As explained in the Advisory Committee Note to Rule 8003:

> [Rule 8003(c) ] provides that if a party mistakenly believes the order appealed from is final and files only a notice of appeal, the appeal is not automatically dismissed. The district court ... has the options to direct that a motion be filed, to decide exclusively on the papers already filed to grant leave to appeal, or to deny leave to appeal.

*Accord, e.g., In re Emergency Beacon Corp.,* 52 B.R. 979, 985 n. 5 (S.D.N.Y.1985), *aff'd,* 790 F.2d 285 (2d Cir.1986). Because appellants in this case reasonably believed that they were entitled to an appeal as of right from the bankruptcy court's section 506(c) ruling, and because the parties have thoroughly briefed the issue of appealability, this Court has decided to grant leave to appeal exclusively on the papers already filed.

## 2. *The Merits*

Section 506(c) of Title 11 permits the bankruptcy trustee to charge a secured creditor with the reasonable and necessary expenses of preserving or disposing of property, to the extent that the expenses were incurred for the benefit of the creditor.[4] This provision represents an exception to the general rule that payment of administration expenses is the responsibility of the debtor's estate, not its secured creditors. *Flagstaff I, supra,* 739 F.2d at 76 (citing *In re Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982)). To justify the imposition of costs against a secured creditor, it must be shown "that [the debtor's] funds were expended primarily for the benefit of the creditor and that the creditor directly benefited from the expenditure." *Flagstaff II, supra,* 762 F.2d at 12. Alternatively, expenses are properly charged against a secured creditor if it has consented to pay the expenses. *Flagstaff I, supra,* 739 F.2d at 77.

Thus, in *Flagstaff II,* the Second Circuit disallowed the imposition of back payroll taxes on the secured lender, where the secured lender at the outset of the Chapter 11 proceedings had a $22 million claim against the debtor secured by $42 million in collateral. When the Chapter 11 proceedings aborted, the indebtedness had been reduced to $4 million, but the balance was substantially under-collateralized. *Flagstaff II, supra,* 762 F.2d at 12. Even if it was true that the valuation of the collateral at the outset of the proceedings was based on the going concern value of the collateral and that the bankruptcy proceedings helped to preserve that value, the imposition of expenses against the secured credi-

tor pursuant to section 506(c) was unwarranted. *Id.* No direct benefit to the secured creditor had been established, and it is not sufficient under section 506(c) that possible or hypothetical benefits are suggested. *Id.*

In *Flagstaff I, supra,* 739 F.2d 73, the court disallowed the imposition on the secured creditor of attorneys' fees and other professional fees of the debtor and the Committee of Unsecured Creditors. In light of the deterioration of the secured lender's position as the reorganization proceedings progressed, the court declared that "it required rather strained logic to conclude that [the secured creditor] actually benefited from appellee's services." *Id.* at 76.

▬ In the instant case, the bankruptcy court held that its order requiring that the Conda Assets be maintained benefited the Secured Lenders ·within the meaning of section 506(c), and that the Secured Lenders had consented to the imposition of costs upon them by opposing that branch of the Debtors' motion seeking to abandon the Conda Assets. Having considered de novo these conclusions of law of the bankruptcy court,[5] this Court reverses that portion of the order assessing costs against the Secured Lenders and directs the bankruptcy court to disallow payment of maintenance costs from those proceeds of the sale of the Conda Assets in which the Secured Lenders held a security interest.

The bankruptcy court declared that the reimbursable nature of the expenses was obvious, and that "it is difficult to imagine a more clear case under § 506(c)." 64 B.R.

---

**4.** 11 U.S.C. § 506(c) provides: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

**5.** The findings of fact of a bankruptcy court in a core proceeding are entitled to deference, and will be overturned on appeal only if clearly erroneous. *E.g., In re Emergency Beacon Corp., supra,* 52 B.R. at 986. Conclusions of law, however, are to be reviewed de novo. *E.g., In re Allied Artists Pictures Corp.,* 71 B.R. 445, 448 (S.D.N.Y. 1987) (district court must make inde-

pendent review of bankruptcy court's conclusions of law, although bankruptcy court's findings of fact may not be set aside by district court unless clearly erroneous); *In re Tesmetges,* 47 B.R. 385, 388 (S.D.N.Y. 1984) (when a bankruptcy judge's conclusions are challenged, district court must make an independent determination of applicable law). The order of the bankruptcy judge in this case assessing costs against the Secured Lenders involves an application of section 506(c) to undisputed facts, and is therefore subject to de novo review by this Court.

at 911. It is true that the costs of maintaining the Conda Assets pending a later sale or abandonment present a paradigm of the type of expense that is meant to be covered by section 506(c). However, under the undisputed facts of this case, the section 506(c) criteria for shifting costs to the Secured Lenders have not been met, and it is inappropriate to assess these costs against them.

First, it was error for the bankruptcy court to conclude that the Secured Lenders had consented to the imposition of costs by opposing the branch of the Debtors' motion seeking to abandon the Conda Assets. Implied consent is generally limited to cases where the creditor has in some way caused the additional expense. *Flagstaff II, supra*, 762 F.2d 12. It is undisputed that the Secured Lenders favored the prompt sale of the Conda Assets. They did not oppose abandonment, but simply asked that the bankruptcy court defer consideration of the abandonment request until it had decided whether to permit the sale. The Secured Lenders were concerned that simultaneous consideration of the request to sell and to abandon the Conda Assets would depress the price potential purchasers would be willing to offer for the property. Since the Secured Lenders did not oppose the sale,

but in fact actively advocated the sale, they cannot be said to have consented to the imposition of expenses on them, or to have caused the expenses.[6] The bankruptcy court put over the planned August 1, 1986 auction of the Conda Assets when the Debentureholders objected to the sale.[7] The delay cannot be put on the head of the Secured Lenders.

The bankruptcy court held in the alternative that section 506(c) could be applied against the Secured Lenders because the maintenance costs directly benefited them.

> The costs Beker has incurred and will incur to maintain and mothball the Conda Plant are necessary to preserve it. Absent such expenditures, the Conda Plant would be a rusting hulk and a prospective purchaser would be faced with exorbitant start-up costs and a long delay before the plant could be effectively operated. These expenditures will thus directly and primarily benefit the secured creditors by preserving their collateral and facilitating its disposition in the future.

64 B.R. at 911. Missing from the bankruptcy court's analysis is a consideration of the $21 million offer to buy the Conda Assets that expired on August 1, 1986.[8]

---

6. Thus, *In re Trim–X Inc.*, 695 F.2d 296 (7th Cir.1982), is inapposite. In that case, the Seventh Circuit held that the secured creditor's one month delay in filing its response indicating that it would not oppose the debtor's application to abandon certain assets had caused the debtor to incur one month's storage costs, and therefore those costs could properly be assessed against the creditor. *Id.* at 301. Since in this case the Secured Lenders favored a prompt sale of the Conda Assets and made their position known to the bankruptcy court in a timely manner, it is improper to infer that they consented to bear costs pursuant to section 506(c). The Secured Lenders made their position known to the bankruptcy court, at the latest, by August 11, 1986, when they filed their Statement with the court. At that time the offer to buy was still outstanding. Although the offer had then been reduced to $10 million, it was still sufficient to cover the entire amount of the Secured Lenders' interest in the Conda Assets.

7. It may very well be that the Debentureholders consented to the imposition of costs on them pursuant to section 506(c). That issue, however, is not before this Court.

8. In its recitation of the facts, the bankruptcy court described the offer as follows.

> At the hearing Beker stated its belief that it had obtained ... a conditional offer from a Mr. McCarty, a former executive with Beker who was represented by Weiss, Peck & Greer, to purchase the Conda Assets for $21 million, $10 million, or $500,000 depending on whether the sale was consummated on August 1, 1986, later that month, or this fall, respectively. Whether this offer is real is debatable. There is no evidence of its existence or that the offeror is aware of this Court's August 5, 1986 order preventing any purchaser from forcing Beker's partner, WCFL, to mine ore this fall. Moreover, the decrease in the offered price from $10 million to $500,000 if the sale is made in September rather than August appears to be designed as a pressure tactic to force a quick sale at a lower price than could otherwise be obtained.

64 B.R. at 905. Although the quoted passage expresses some skepticism as to the bona fides of the offer, it does not amount to a finding of fact that the offer was a sham and that the offeror would not have made good if his offer had been accepted on August 1, 1986. In fact,

344

Had the bankruptcy court permitted the sale on August 1, as originally scheduled, then the Secured Lenders would have recovered the full $10 million that they were owed and that was secured by the Conda Assets. Any purchase price obtained in excess of $10 million was of no benefit to the Secured Lenders, but only to the Debentureholders and to the equity creditors. Since the Secured Lenders would have been fully paid had the bankruptcy court permitted the planned sale on August 1, 1986, it requires "rather strained logic" to conclude that the mothballing of the Conda Assets until their subsequent sale on July 24, 1987 conferred a direct benefit on the Secured Lenders.

### CONCLUSION

As a matter of law, the mothballing and maintenance of the Conda Assets from July 14, 1986 until July 24, 1987 conferred no direct benefit on the Secured Lenders within the meaning of section 506(c). Nor can the Secured Lenders' request that the bankruptcy court defer consideration of the Debtors' application to abandon the Conda Assets be construed as consent to the imposition of such costs. Accordingly, the order of the bankruptcy court assessing the costs of maintaining the Conda Assets against the Secured Lenders is reversed. The bankruptcy court is directed to disallow payment of maintenance costs from those proceeds of the sale of the Conda Assets in which the Secured Lenders held a security interest. The application of the Secured Lenders for costs and expenses, including attorneys fees, on this appeal is denied.

It is so ordered.

the original scheduling of the auction sale suggests that the bankruptcy court believed just the opposite. Absent such a finding of fact, there is no support for the bankruptcy court's conclusion that the mothballing of the Conda Assets provided a direct benefit, within the meaning of section 506(c), to the Secured Lenders.