FORMATECH, INC., Debtor.

Formatech, Inc., Appellant,

v.

Sovereign Bank, and Massachusetts
Growth Capital Corporation,
Appellees.

BAP No. MW 12–012.
Bankruptcy No. 11–43424–MSH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Dec. 7, 2012.

364

Barry C. Richmond, Esq., on brief for Appellant.

Bertin C. Emmons, Esq., on brief for Appellee.

Before LAMOUTTE, KORNREICH, and CABÁN, United States Bankruptcy Appellate Panel Judges.

KORNREICH, Bankruptcy Judge.

The debtor, Formatech, Inc. ("Formatech"), appeals from the order of the bankruptcy court denying its motion to surcharge the collateral of Sovereign Bank ("Sovereign") and Massachusetts Growth Capital Corporation ("MGCC") under § 506(c) for fees and expenses incurred by its counsel.[1] For the reasons set forth below, this appeal is **DISMISSED.**

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and " § " refer to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 37.

## BACKGROUND

Formatech filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the District of Massachusetts on August 12, 2011.[2] Shortly after filing, Formatech received authorization to employ professionals to locate prospective buyers for its business as a going concern. Thereafter, EquipNet, Inc. was identified as a purchaser for all of Formatech's machinery and equipment for the sum of $655,000.00. Formatech agreed to sell its assets to EquipNet, Inc., subject to an order of the bankruptcy court allowing for bid procedures and an auction sale. The bankruptcy court approved the sale to EquipNet, Inc., as conditioned by Formatech, and set January 3, 2012, as the deadline for submitting bids. The auction date and hearing to approve the sale were set for January 5, 2012. The court-approved bid procedures provided that no bid would be considered unless it was (1) "received by Seller ... on or prior to the Bid Deadline," and (2) "accompanied by a good faith deposit ... delivered via wire transfer or certified funds to Seller's counsel." Additionally, Formatech was permitted "to waive defects in any bid and to provide bidders with an opportunity to cure such defects within three ... business days after the Bid Deadline."

On the bid deadline, Formatech's counsel learned that Canaimex, Inc. had submitted an offer to purchase Formatech's assets as a going concern for $690,000.00. That same day, Formatech, while still a debtor-in-possession, filed a motion to surcharge the collateral of Sovereign and MGCC under § 506(c) for counsel fees and expenses in the approximate amount of $35,000.00 incurred in connection with the proposed sale. In making this request, Formatech stated that the sale would be for the sole benefit of the secured parties. The next day, Formatech's counsel received an uncertified check in the amount of $69,000.00 from Canaimex.

The auction sale and hearing to approve the sale took place as scheduled on January 5, 2012, without any disclosure by Formatech that the Canaimex check was uncertified. Canaimex was the winning bidder with a bid of $1,070,000.00. The backup bid was submitted by EquipNet, Inc., together with two other entities, in the aggregate amount of $1,045,000.00 for selected categories of assets.

A week later, the court entered an order approving the sale, indicating as follows:

> Based on representations of counsel made on the record at the Sale Hearing, (1) the Debtor has appropriately marketed its assets in full compliance with the Bid Procedures Order, including with respect to the solicitation and evaluation of bids, the conduct of the Sale and the acceptance of the offer of the Winning Bidder and if necessary, the Backup Bidder, all such actions are hereby ratified and approved....

That order also stated: "The Debtor's determination that the Winning Bidder's offer of $1,070,000.00 constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment." Subsequently, Canaimex defaulted on its obligation to close. The backup bidders stepped in and acquired the assets.

It appears that the details concerning Canaimex's uncertified check did not emerge until February 2, 2012, when, at

2. As of the petition date, Sovereign held a first priority lien on all of Formatech's assets, securing an indebtedness of approximately $735,000.00. MGCC held a junior lien on all of Formatech's assets, securing obligations of approximately $336,620.00. Additionally, Formatech owed approximately $1,261,000.00 in unsecured claims.

the hearing on the surcharge motion, the bankruptcy court ordered that:

> Debtor's counsel shall file and serve by February 17, 2012 a supplement to its fee application containing a description and breakdown of time billed for services relating to the sale of the Debtor's assets. In addition Debtor's counsel shall file and serve by that date a statement setting forth the base [sic] upon which counsel was entitled to accept a non-certified deposit check from the high bidder at the auction of the Debtor's assets.

Significantly, the bankruptcy court docket reflects that February 2, 2012, was also the day that the bankruptcy court granted the United States Trustee's motion to convert the case to chapter 7.[3]

In the statement provided by Formatech's counsel, he represented that Formatech had decided to waive the requirement for certified funds "due to time constraints." He further explained that Formatech believed "that the Canaimex bid to purchase the company as a going concern would be very beneficial to creditors." After further hearing, the bankruptcy court took the matter under advisement, and on March 7, 2012, entered an order denying the surcharge motion, stating:

> Any benefit conferred upon Sovereign as a result of the actions of the debtor and [its counsel,] Mr. Richmond[,] must be measured against the loss to Sovereign of $65,000 [sic] due to the failure of the debtor and Mr. Richmond to insure that the non-refundable deposit of Canaimex, Inc., the winning bidder for the debtor's assets and Sovereign's collateral, was

secure in the event Canaimex refused to close on the sale, which it ultimately did. Upon its refusal to close, Canaimex stopped payment on its $65,000 [sic] deposit check. The decision of the debtor and Mr. Richmond to accept non-certified funds in the form of a check drawn on a Canadian bank for Canaimex's deposit was inexcusable notwithstanding the provision in the approved bid procedures giving the debtor discretion to waive defects in any bid and allow a bidder three business days after the bid deadline to cure such defects. Canaimex's presenting a non-certified foreign check for its deposit was not a defect in its bid; it was a fundamental failure to comply with the terms of sale. Indeed, Mr. Richmond had an affirmative duty to disclose this significant departure from the terms of sale at the sale hearing so that the Court, Sovereign and other parties could address it directly with Canaimex before proceeding with the auction and consider it when evaluating whether Canaimex's bid was in fact the "highest and best" bid for the debtor's assets. It is unreasonable to allow the debtor to recover any amount from Sovereign's collateral under these circumstances.

This appeal ensued, with Formatech maintaining that the bankruptcy court erroneously "penalized" its counsel by denying the surcharge motion.[4] Sovereign urges us to affirm.[5]

### STANDARD OF REVIEW

██ A bankruptcy court's findings of fact are reviewed for clear error and its

---

**3.** *See In re Colón Martinez*, 472 B.R. 137, 139 n. 4 (1st Cir. BAP 2012) (stating "we may take judicial notice of the bankruptcy court's docket").

**4.** The docket reflects that the bankruptcy court allowed counsel's fees and expenses in a

reduced amount. That fee award is the subject of another appeal. *See Richmond v. Sovereign Bank (In re Formatech, Inc.)*, No. MW 12–013 (B.A.P. 1st Cir. filed Mar. 19, 2012).

**5.** MGCC did not file a brief and did not participate in oral argument.

conclusions of law are reviewed *de novo.* *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir.2010). Whether § 506(c) permits a surcharge of a secured creditor's collateral is a question of law subject to *de novo* review. *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp., Inc. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1065 (9th Cir.2001); *see also Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.)*, 128 F.3d 203, 210 (4th Cir.1997); *In re Beker Indus. Corp.*, 89 B.R. 336, 342 n.5 (S.D.N.Y.1988).

## *JURISDICTION*

 Before addressing the merits of an appeal, we are compelled to determine whether we have appellate jurisdiction, even if the question is not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (citing *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998)). We may hear appeals from final judgments, orders, and decrees and, with leave of the court, from interlocutory orders and decrees. *See* 28 U.S.C. § 158(a), (b), and (c).

 A decision under § 506(c) is final when "it does not involve continuing services or obligations." *In re Beker Indus. Corp.*, 89 B.R. at 340. Because the bankruptcy court's order contemplates no fur-

ther services or obligations, it is a final order for purposes of appeal. But finality is not the sole determinant for establishing appellate jurisdiction when, as in this instance, there is an apparent lack of standing. Moreover, as with other jurisdictional factors, standing may be raised *sua sponte* at any time. *See* 1st Cir. BAP L.R. 8011–1(f)(1); *Torres Martinez v. Arce (In re Torres Martinez)*, 397 B.R. 158, 163 (1st Cir. BAP 2008). Accordingly, we must examine Formatech's standing on appeal.

 Formatech was a debtor-in-possession when it brought the surcharge motion, but it was a chapter 7 debtor when it commenced this appeal.[6] This change in status deprived Formatech of standing. "Upon conversion and appointment, a [chapter 7] trustee steps into the shoes of the debtor-in-possession with respect to all rights, responsibilities and liabilities." *Official Comm. of Unsecured Creditors v. Belgravia Paper Co., Inc. (In re Great Northern Paper, Inc.)*, 299 B.R. 1, 5 (D.Me.2003) (citation omitted). Thus, "when [c]hapter 7 proceedings commence it is the trustee that generally has standing to appeal, representing the interests of the estate." *Id.* at 6 (citing *Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 657 (4th Cir.1997)).

 Formatech also lacks standing because, as a chapter 7 debtor, it is not a person aggrieved. A person aggrieved is a party "whose pecuniary interests are adversely affected by the challenged order."[7] *Donarumo v. Furlong (In re Furlong)*, 660

---

**6.** Section 506(c) provides a trustee may seek to surcharge a secured party. Formatech was a debtor-in-possession when it brought the surcharge motion. As such, it had apparent standing to bring the motion. *See* 11 U.S.C. § 1106(a).

**7.** At oral argument, counsel suggested that Formatech's counsel was the real party in interest because its counsel was aggrieved by

the order denying the surcharge. To this we respond: (1) the notice of appeal was filed by Formatech, not counsel acting on his own behalf; and (2) this assertion reflects a misapprehension of § 506(c), which limits a surcharge claim to the trustee. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

F.3d 81, 86 (1st Cir.2011) (citations omitted). "The nature of bankruptcy litigation, with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court, mandates that the right of appellate review be limited to those persons whose interests are directly affected." *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987) (citations omitted). "A party's pecuniary interests are affected if the order diminishes the appealing party's property, increases its burdens, or detrimentally affects its rights." *Austin Assocs. v. Howison (In re Murphy),* 288 B.R. 1, 4 (D.Me.2002) (citing *Kehoe v. Schindler (In re Kehoe),* 221 B.R. 285, 287 (1st Cir. BAP 1998)). As a chapter 7 debtor, Formatech "lacks a pecuniary interest in the property of the estate." *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse, Inc.),* 992 F.2d 7, 10 (1st Cir.1993) (citations and internal quotation omitted). For this reason, the outcome of this appeal will not diminish Formatech's property, increase its burdens, or detrimentally affect its rights.[8]

## *CONCLUSION*

This appeal is **DISMISSED** due to Formatech's lack of standing.

---

8. Formatech would be a party aggrieved: (1) if it could show that success on appeal would generate assets in excess of liabilities, entitling it to a distribution; or (2) if it could establish that the denial of the surcharge motion affected its discharge. *See Mark Bell Furniture Warehouse, Inc.,* 992 F.2d at 10. We infer that there could be no surplus and no distribution to Formatech upon reversal because the requested surcharge could not have benefitted any claims or interests beyond administrative expenses. It is also apparent that the discharge of Formatech is not implicated.