**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

---

**BAP NO. MW 20-019**

---

**Bankruptcy Case No. 11-43854-CJP**

---

**TRACY L. KROWEL,**
**Debtor.**

---

**BLACKSTONE INVESTMENT PARTNERS, LLC,**
**Appellant,**

**v.**

**SANTO ARCURI and**
**JOSEPH H. BALDIGA, Chapter 7 Trustee,**
**Appellees.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Christopher J. Panos, U.S. Bankruptcy Judge)**

---

**Before**
**Lamoutte, Cabán, and Fagone,**
**United States Bankruptcy Appellate Panel Judges.**

---

**David Baker, Esq., on brief for Appellant.**
**Philip F. Coppinger, Esq., on brief for Appellee, Santo Arcuri.**
**No brief submitted for Appellee, Joseph H. Baldiga, Chapter 7 Trustee.**

---

**September 10, 2021**

---

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

The interest of the debtor, Tracy L. Krowel, in real property located at 49 Olde Colony Drive, Shrewsbury, Massachusetts—the subject of litigation in other courts for more than a decade—is now at the heart of this appeal. Blackstone Investment Partners, LLC ("Blackstone") appeals from the bankruptcy court's order denying its request to reopen Krowel's chapter 7 bankruptcy case to facilitate, among other things, Blackstone's contemplated purchase of the property from the chapter 7 trustee. Discerning no concrete, pecuniary harm to Blackstone stemming from the bankruptcy court's refusal, as discussed below, we **DISMISS** this appeal on account of Blackstone's lack of appellate standing.

## FACTS[1]

In 2009, Santo Arcuri obtained a state court judgment against Krowel for approximately $200,000. Around the same time, Shrewsbury Street Development Companies, Inc. ("SSDC") used Krowel's money, together with a mortgage loan, to acquire a home in Shrewsbury, Massachusetts. Krowel and her husband intended to use that property as their principal residence. Immediately after acquiring the property, SSDC transferred it to a trust. Krowel's brother was the trustee and Krowel was a guarantor of SSDC's mortgage debt.

In 2010, Arcuri brought a fraudulent transfer action against Krowel and the successor trustee of the trust. The state court granted Arcuri a prejudgment attachment against the property. Arcuri's exercise of remedies prompted Krowel to resort to bankruptcy and, in 2011, she filed a voluntary petition under chapter 7—her fifth bankruptcy filing over a five-year period. Krowel did not include the property on her bankruptcy schedules; instead, she scheduled

---

[1] All references to "Rule" are to the Federal Rules of Bankruptcy Procedure and references to the "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise noted.

a "Possible Claim against Santo Arcuri" with an unknown value and identified the pending litigation with Arcuri on her Statement of Financial Affairs.

Arcuri filed a proof of claim for $230,000. According to Arcuri, this claim was based on the 2009 state court judgment and was secured by the property (on account of the prejudgment attachment) to the extent of $200,000. Later, the bankruptcy court entered an order granting Arcuri relief from the automatic stay to pursue his rights and remedies against the property, including continuing the state court fraudulent transfer action.[2]

Krowel received a chapter 7 discharge in April 2012 and, shortly after that, the chapter 7 trustee filed a report of no distribution, indicating that the case was a "no-asset case" and that the estate had been fully administered. The case was closed in August 2013.

More than a year later, the state court entered a judgment in favor of Arcuri, declaring that Krowel was "the one hundred . . . percent beneficial owner" of the property and that she had fraudulently transferred it to the trust. The court found that Krowel and her husband had purchased the property as their primary residence and "contemplated" that the property "would be put in trust" to protect it from their creditors, including Arcuri. The court also found that SSDC was created to further the fraudulent transfer scheme, and ruled:

> Since the transfer was fraudulent the plaintiff [Arcuri] has broad rights under [the Massachusetts Uniform Fraudulent Transfer Act § 8(a)] to obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim", "an attachment or other provisional remedy against the asset", "an injunction against further disposition of the asset" and "any other relief the circumstances may require". Where the creditor has obtained a judgment on the claim against the debtor as is the case here the creditor "may levy execution on the asset transfer[red] or its proceeds". [Mass. Gen. Laws ch. 109A, § 8(b)].

---

[2] Arcuri served his motion for relief from the automatic stay on the chapter 7 trustee, who did not oppose the motion.

Consequently, the state court ordered the property to be sold and the net proceeds of the sale to be applied to Arcuri's judgment.

Following the entry of the fraudulent transfer judgment, Krowel moved to reopen her chapter 7 case, asking the bankruptcy court to determine her ownership interest in the property. After initially denying the motion, the bankruptcy court reconsidered the denial, entered an order reopening the case, and ordered the appointment or reappointment of a chapter 7 trustee. The court did not, however, permit Krowel to amend her schedules to disclose her interest in, or claim a homestead exemption in, the fraudulently transferred property. The court reasoned that the chapter 7 trustee—fully aware of Arcuri's fraudulent transfer action and the property—had not taken the position that either the lawsuit or the property was an asset that needed to be administered for the benefit of creditors.

The state court-ordered auction of the property was conducted in summer 2016 and, after the winning bidder failed to close on the sale, Arcuri acquired the property as a result of his back-up bid. Prior to the auction, Krowel and her husband sued Arcuri and the auctioneer to determine, among other things, their homestead and redemption rights. The state court dismissed their complaint but also determined, on Arcuri's surviving counterclaim, that the auction was conducted in full compliance with prior court orders and, further, that the sale was reasonable. Following some litigation over possession of the property, Arcuri was finally able to sell the property to a third party in November 2017.

Meanwhile, in May 2017, Krowel's chapter 7 case was closed for a second time. Over a year later, in August 2018, Blackstone—the appellant here—arrived on the scene.

Blackstone asked the bankruptcy court to reopen Krowel's case under § 350(b).[3]  More particularly, Blackstone sought an order directing Krowel "to amend her bankruptcy [s]chedules, or alternatively, granting Blackstone leave to do so, in order to schedule" an "unscheduled, un-administered asset," namely, "[t]he bankruptcy estate's interest" in Arcuri's fraudulent transfer action.  (emphasis omitted).  Blackstone asserted that the fraudulent transfer action "was a pre-petition asset of the bankruptcy estate that never was scheduled by [Krowel] . . . and thus never either exempted by [Krowel] or abandoned or administered by the duly appointed chapter 7 trustee . . . ."  (emphasis omitted).  Blackstone added that it had offered to acquire the estate's interest in the litigation and that the chapter 7 trustee had made a counteroffer, which Blackstone presumed "confirm[ed]" the trustee's belief that the litigation was estate property.  The chapter 7 trustee and Arcuri both opposed Blackstone's motion.

The bankruptcy court denied Blackstone's motion without a hearing.  First and foremost, the court ruled that Blackstone was not a "party in interest" entitled to seek reopening of the case under Rule 5010.  Noting that Rule 5010 does not define "party in interest," the court joined those courts that "have found the examples of parties in interest set forth in § 1109(b) useful when examining" Rule 5010.  The court then observed that under § 1109(b), a party in interest includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a

---

[3]  Before Blackstone made its request under § 350(b), SSDC made a similar request.  As grounds, SSDC insisted that it remained the holder of title to the property in "fee absolute," because the state court determined that the trust never came into existence and, therefore, the attempted transfer of the property to the trust was void ab initio.  SSDC maintained that reopening would enable it to challenge the secured status of Arcuri's claim.  In addition, in April 2018, SSDC sought to vacate the order granting Arcuri relief from the automatic stay on similar grounds.  During a hearing on April 30, 2018, the bankruptcy court denied both motions.  While SSDC's motion to reconsider was pending, Blackstone filed the motion which led to the order that is the subject of this appeal.  SSDC has appealed the order denying its motion to reopen and its motion to vacate the order granting Arcuri relief from the automatic stay.  See Shrewsbury St. Dev. Cos. v. Arcuri (In re Krowel), BAP No. MW 20-020, slip op. (B.A.P. 1st Cir. Sept. 10, 2021) (dismissing appeal on standing grounds).

creditor, an equity security holder, or any indenture trustee." It added that courts have determined that the term party in interest "includes all persons whose pecuniary interests are directly affected by the bankruptcy proceedings" and is "implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code." In concluding that Blackstone did not qualify as a party in interest under these standards, the court reasoned:

> Blackstone is not a party enumerated in § 1109(b) and, although it claims to be a "stalking horse bidder" that would have a pecuniary interest if the case is reopened, that interest is too speculative to confer Blackstone standing to reopen the case under the circumstances. There is no agreement with the Trustee with respect to sale of the purported asset, and the Trustee is not seeking to reopen the case for the purpose of pursuing the purported asset.

The court then declared that even if Blackstone qualified as a party in interest, it "would decline to exercise its discretion to reopen the case," reasoning:

> [T]here would be no purpose served that would substantially benefit the estate given the remoteness for recovery to creditors or benefit to the Debtor and other factors, such as the passage of time and prejudice to parties in interest, including the Trustee, weigh heavily against the Court exercising its discretion. Blackstone seeks to reopen the case so that a purported "unscheduled, un-administered asset of the estate," which the Trustee described as . . . "some ephemeral interest" in the [fraudulent transfer action], can be scheduled in order to impact the validity of the litigation and the orders the [state court] has entered in that matter. Notwithstanding the allegations in the Motion, however, the existence of the [fraudulent transfer action] was disclosed by the Debtor in her Statement of Financial Affairs, and the Debtor's potential claims against Arcuri were disclosed in the Debtor's Schedule B. The Debtor never claimed an exemption in the potential claim against Arcuri. There is a final order . . . allowing Arcuri to pursue his rights and remedies with respect to the [p]roperty, including to proceed with the pending [fraudulent transfer action], and [that action] was referenced in countless pleadings and the subject of numerous contested matters throughout [the] pendency of the Debtor's case. The Trustee declined to pursue any estate interest in the [fraudulent transfer action], and the case was ultimately closed as a no asset case.

The court further noted that the property "was never an asset administered as part of [Krowel's] bankruptcy estate . . . nor could it have been given the state court orders that had issued."

6

The bankruptcy court summarized its analysis:

> While it appears that Blackstone ultimately wishes to challenge the results of litigation pending outside of this Court, the Court would not exercise its discretion to reopen the case, even if Blackstone had standing, because cause has not been shown. In exercising its discretion, among other things, the Court has considered the passage of time since the case has been closed, entry of the [state court judgment] and other events that have occurred since the case was closed, and the fact that the relief that Blackstone would seek in a reopened case would be remote, could potentially lead to conflicting judicial determinations, and would fail to provide a meaningful benefit to the debtor and/or creditors.

This appeal followed.

## DISCUSSION

## I.   Blackstone Lacks Appellate Standing

We must determine whether we have jurisdiction before addressing the merits of an appeal. Formatech, Inc. v. Sovereign Bank (In re Formatech, Inc.), 483 B.R. 363, 367 (B.A.P. 1st Cir. 2012). We have jurisdiction to hear appeals from final bankruptcy court orders. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 575 U.S. 496, 501-02 (2015). "Generally, an order denying a motion to reopen a bankruptcy case is a final order." Canaimex, Inc. v. Mass. Growth Capital Corp. (In re Formatech, Inc.), BAP No. MW 19-016, 2019 WL 7165930, at *4 (B.A.P. 1st Cir. Dec. 19, 2019) (citing Ludvigsen v. Osborne (In re Ludvigsen), BAP No. MB 14-039, 2015 WL 3733193, at *3 (B.A.P. 1st Cir. Jan. 16, 2015)). Finality, however, "is not the sole determinant for establishing appellate jurisdiction." In re Formatech, Inc., 483 B.R. at 367. Lack of standing may deprive us of jurisdiction to review a final order. See id. Here, the record fails to disclose concrete harm to Blackstone caused by the bankruptcy court's refusal to reopen Krowel's case. See In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir. 1987) (stating "the right of appellate review in bankruptcy proceedings has historically been limited to 'persons aggrieved,' *i.e.*, to

those persons whose rights or interests are 'directly and adversely affected pecuniarily' by the order or decree of the bankruptcy court") (citations omitted). The order challenged on appeal does not directly and adversely affect Blackstone's rights or interests; it is not directed at Blackstone or its property. Blackstone is not a creditor and did not acquire the property in any transaction approved by the bankruptcy court. Moreover, this record discloses no connection between Blackstone and either the property or Krowel, prompting us to conclude that Blackstone is a stranger to both. It goes without saying, Blackstone is the one who asked the court to reopen the case, and the denial of its request could therefore be characterized as a disappointment to Blackstone. But the disappointment stemming from the mere denial of a request—particularly by a person not entitled to make that request under applicable law—by itself, does not constitute a sufficient harm to confer appellate standing. Indeed, contingent or speculative harm has never been enough in this circuit to satisfy the requirement of appellate standing. See Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food, Corp.), 565 B.R. 450, 459 (B.A.P. 1st Cir. 2017) ("To be directly affected by the order, the appellant's pecuniary interests . . . cannot be merely contingent or speculative.") (citations omitted) (internal quotation marks omitted). Accordingly, this appeal is **DISMISSED** due to Blackstone's lack of standing.

Despite our ruling regarding Blackstone's standing, we are compelled to make an additional observation: even if we had reached a different conclusion regarding our jurisdiction, this appeal would be easily resolved as one lacking in substance and doomed from the start. Although the merits would lend themselves to easy resolution, such that it would be appropriate to characterize them as "foreordained," see Sinapi v. R.I. Bd. of Bar Examiners, 910 F.3d 544, 550 (1st Cir. 2018) (citation omitted), we would not exercise hypothetical jurisdiction in this instance as the jurisdictional question is neither "thorny" nor a close call. See First State Ins. Co.

8

v. Nat'l Cas. Co., 781 F.3d 7, 10 n.2 (1st Cir. 2015).  Nonetheless, mindful that Arcuri has filed a motion for sanctions under Rule 8020, we offer a few words about the merits of this appeal.  See Blackstone Inv. Partners, LLC v. Arcuri (In re Krowel), BAP No. MW 20-019 (B.A.P. 1st Cir. Sept. 10, 2021) (Order Granting Appellee's Motion for Damages and Costs Under Federal Rule of Bankruptcy Procedure 8020).  Even a cursory survey of the merits reveals not only the futility of this appeal but the woeful deficits in Blackstone's appellate efforts.

## II.     Even if Blackstone had Appellate Standing, this Appeal Would Still be Doomed

The first hurdle for Blackstone in any merits analysis would be a significant one, indeed one that it never attempted to clear.  A bankruptcy case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).  A closed case "may be reopened on motion of the debtor or other party in interest . . . ."  Fed. R. Bankr. P. 5010.  The bankruptcy court denied Blackstone's motion to reopen, concluding that Blackstone was not a party in interest under Rule 5010.  On appeal, Blackstone does not challenge, or even address, this conclusion.[4]  This record presents no reason to deviate from the well-established rule that issues omitted from an appellant's brief are waived. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011); see also Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) ("[W]e have made it abundantly clear that failure to brief an argument does, in fact, constitute waiver for purposes of appeal.") (citations omitted). Accordingly, we would affirm on this ground without going further.

Even if we were inclined to make an exception to the waiver rule, Blackstone could not establish that it qualified as a party in interest for purposes of seeking to reopen Krowel's case.

---

[4]  Blackstone's appellate brief—which is nearly identical to one filed by SSDC in the separate but related appeal, BAP No. MW 20-020—only addresses SSDC's standing, and perfunctorily at that.

We have reviewed the bankruptcy court's thorough analysis of Rule 5010 and the case law interpreting the phrase "party in interest" under § 1109(b). After conducting that analysis, the court then considered the particular facts of the case—none of which appear to be in dispute—and exercised its discretion to deny the request. Were we to review the merits, we would discern neither error nor abuse of discretion; instead, we would elect to adopt the bankruptcy court's careful and cogent analysis. See deBenedictis v. Brady-Zell (In re Brady-Zell), 756 F.3d 69, 71 (1st Cir. 2014) (discouraging appellate courts from "writ[ing] at length" when trial courts have "supportably found the facts, applied the appropriate legal standards, articulated their reasoning clearly, and reached a correct result").

That said, Blackstone's brief identifies nine issues on appeal and, although none of them have merit, we pause to make a few observations about Blackstone's appellate efforts.[5] First, Blackstone's brief contains more than one erroneous factual statement. Blackstone states that this case involves "essentially the same issues" as those presented in Goldsmith v. Massad (In re Fiorillo), 494 B.R. 119 (Bankr. D. Mass. 2013). But, unlike Fiorillo, this is not a case under the Racketeer Influenced and Corrupt Organizations Act, and Blackstone makes no effort to distinguish the two cases, instead glossing over any differences by incorporating the Fiorillo facts by reference. The reference to that case, however, serves little utility beyond acting as a substitute for a meaningful statement of the facts in this case. Fiorillo certainly involved some, but not all, of the parties to this case. See id. To say that the issues in Fiorillo are the same as the issues in this case is more than a stretch.

---

[5] Blackstone characterizes two of the nine listed issues as "immaterial." Whether that representation would amount to waiver or abandonment of those issues is, itself, immaterial, as we need not dwell on immaterial issues for reasons of judicial economy.

Additionally, Blackstone contends that the fraudulent transfer action "was commenced against Tracy Krowel, the debtor, as <u>trustee</u> of the trust, <u>not</u> in her individual capacity." (emphasis in original). Again, that is simply incorrect.

Second, the brief is plagued with statements of law that are incorrect. For example, Blackstone cites <u>Butner v. United States</u>, 440 U.S. 48 (1979), for the idea that "a federal court is not usually bound by anything a state court does unless federal law says otherwise." This is not the holding of <u>Butner</u>. Blackstone also seems to contend that Arcuri's fraudulent transfer action became property of the estate when Krowel filed her chapter 7 petition. That, too, is incorrect. Perhaps the chapter 7 trustee obtained the exclusive right to assert fraudulent transfer actions, thereby preventing creditors from bringing or continuing any such actions. But Arcuri's lawsuit did not become property of the estate, and the contemplated amendment to Krowel's schedules would not have made it property of the estate.

As far as we can tell, Blackstone's argument rests on a single foundational idea, namely, that Arcuri's prejudgment attachment was voided, by operation of law, when the state court entered a judgment declaring that Krowel—not the trust—was the owner of the property.[6] Because the attachment was directed at property of the trust, so the argument apparently goes, the later determination that Krowel owned the property left Arcuri without an attachment. This argument—unsupported by citation to authority—is nonsensical. Arcuri, as one of Krowel's creditors, brought suit under the Massachusetts Uniform Fraudulent Transfer Act. It would make little sense for a provisional, prejudgment remedy awarded to a creditor to be voided by a final

---

[6] To be precise, Blackstone maintains that the entry of the judgment "arguably" voided the prejudgment attachment, such that the property was, in Krowel's hands, unencumbered by the attachment. This, according to Blackstone, is the cloud on the title to the property that would have been addressed by the bankruptcy court after the chapter 7 case was reopened.

judgment in favor of that creditor. Not surprisingly, Blackstone cites no law for this dubious proposition, and seems to ignore applicable Massachusetts law. See Mass. Gen. Laws ch. 109A, § 8(a)(2) (authorizing courts, in fraudulent conveyance actions, to order "an attachment or other provisional remedy against the asset transferred").

Blackstone now proposes, albeit implausibly, that because circumstances have changed—presumably by virtue of the entry of judgment in the fraudulent transfer action declaring Krowel the owner of the property—the grant of relief from stay and the very question of whether Arcuri's claim was colorable should be "revisi[ted]." Blackstone, itself, seems to recognize that this argument is a stretch, at least conceding: "[U]nder the facts as known to [the bankruptcy court] at the time of the motion [for relief from stay], relief was properly granted." As part of its ruse to invalidate Arcuri's interest in the property, Blackstone spins an even more outrageous (not to mention belated) argument—that the state court lacked jurisdiction to enter judgment in the fraudulent transfer action because the order granting relief from stay is now infirm. For this proposition, Blackstone cites generally to Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969 (1st Cir. 1997). We are hard-pressed, however, to discern the import of Soares here.

Contrary to Blackstone's contention, there is no "bankruptcy business to be done" here. Perhaps Blackstone or SSDC claims to be the fee owner of the property (notwithstanding Arcuri's sale of the property following an auction that was, in effect, confirmed by the state court). As a result, any dispute regarding title to the property simply does not implicate the chapter 7 estate. Resolution of the dispute would not provide a benefit to Krowel, would not provide any benefit to her creditors, and would not assist the chapter 7 trustee in the completion of his duties or the administration of the estate. That is hardly the type of "bankruptcy business"

12

that would necessitate the reopening of a closed case. See In re Dunning Bros. Co., 410 B.R. 877, 887 (Bankr. E.D. Cal. 2009).

Finally, Blackstone's reliance on both Dunning and Dwyer v. Peebles (In re Peebles), 224 B.R. 519 (Bankr. D. Mass. 1998), is misplaced. Blackstone holds Dunning out as its best case— i.e., its strongest support. Yet, any similarity between Dunning and the instant case is superficial. In Dunning, the court reopened a case that had been closed for decades for the purpose of administering an unscheduled parcel of land. See 410 B.R. at 880. Unlike the case before us, the movant's interest in the property at issue in Dunning was clear and undisputed, and the purpose for reopening meritorious. See id. ("The desire of the [movant] railroad easement owner to own the fee under [its] right of way and levee triggered th[e] . . . case reopening.").

Blackstone's invocation of Peebles is equally wide of the mark. That case involved a debtor's failure to schedule or otherwise disclose an asset—a failure that resulted in a criminal indictment for bankruptcy fraud. In re Peebles, 224 B.R. at 520. The court agreed with the chapter 7 trustee that the failure to schedule or disclose the asset prevented the case from being closed under § 350 and, as a result, the statute of limitations under § 727(e)(2)(B) did not begin to run. See id. This case is easily distinguishable. Krowel identified Arcuri's lawsuit relating to the property on her Statement of Financial Affairs and the chapter 7 trustee had an ample opportunity to—and, in fact, did—consider whether there was any benefit to the estate from prosecuting the lawsuit on behalf of the estate. Under these circumstances, Krowel's failure to list an interest in the property on her schedules is neither surprising nor troubling. What *is* troubling is the underlying premise of this appeal—that a stranger to the property can seek to reopen a closed bankruptcy case to unravel a sale that became final years ago for the purpose of purchasing the property from the chapter 7 trustee, without any reasonable explanation grounded

13

in law as to how that objective was to be achieved. Blackstone's other proffered reason for reopening Krowel's case—to force the chapter 7 trustee to abandon the property—also makes no sense to us and does not constitute "cause" such that the bankruptcy court was required to reopen the case. Moreover, we reject Blackstone's implication that the chapter 7 trustee neglected to administer any purported asset of the estate.

For all of the foregoing reasons, were we to undertake an examination of the merits of this appeal, we would conclude that the bankruptcy court properly rejected Blackstone's request to reopen Krowel's case.

## **CONCLUSION**

As we conclude that Blackstone is without appellate standing, this appeal is **DISMISSED** for lack of jurisdiction.